**Albert J. WAHBA, Plaintiff,**

v.

**NEW YORK UNIVERSITY and Severo Ochoa, Defendants.**

**No. 70 Civ. 2780.**

United States District Court,
S. D. New York,
Civil Division.

June 12, 1973.

Faulkner & Schmidt, New York City, for plaintiff; Stanley Faulkner, New York City, of counsel.

Burke & Burke, New York City, for defendants; George Harris, New York City, of counsel.

OPINION GRANTING DEFEND-
ANTS' MOTION FOR SUMMARY
JUDGMENT AND DISMISSING
COMPLAINT

WHITMAN KNAPP, District Judge.

This action was brought by plaintiff, a biochemist, to recover punitive damages for his allegedly unconstitutional dismissal from the faculty of the New York University School of Medicine. Jurisdiction rests on 28 U.S.C. § 1331. Defendants move for summary judgment or judgment on the pleadings on the limited ground that their dismissal of the plaintiff does not rise to the level of state action and therefore that plaintiff's claim that he has been denied due process of law must fail. Oral argument was heard on June 1, 1973. For the reasons that follow, the motion—treated as one for summary judgment—is granted.

The relevant facts are essentially undisputed. In January 1963 plaintiff was hired as an instructor in the Biochemistry Department of the New York University School of Medicine, and rose to the level of assistant professor the following September. In January 1966 he became research associate professor and worked on a research project within the Biochemistry Department funded by a National Institute of Health grant from the U. S. Department of Health, Education and Welfare. Throughout the relevant period defendant Ochoa was Chairman of the Biochemistry Department.

In June 1969 plaintiff addressed a symposium sponsored by the Cold Spring Harbor Laboratory of Quantitative Biology on the topic of the research being done in the New York University Biochemistry Department, and subsequently submitted for publication in the Cold Spring Harbor Symposia an article describing that research.

The facts from this point on are clouded by acrimony, but—as they are not material to the question of state action—suffice it to say that a heated dispute arose between plaintiff and defendant Ochoa as to the propriety of plaintiff's submission of the manuscript without prior approval by Dr. Ochoa, as a result of which plaintiff's appointment was not renewed for the coming academic year. Plaintiff subsequently joined the faculty of the University of Sherbrooke School of Medicine in Canada.

Plaintiff contends that the decision not to renew his contract represents a

violation of his academic freedom and of his Fifth Amendment rights not to be deprived of his property without due process of law. Whatever may be the merit of this contention, a finding of state action must precede any determination of it, and I find myself precluded from making such finding by both the precedents and the undisputed facts.

Plaintiff's assertion of "state action" (both parties use that expression as a term of art, although the governmental involvement at issue is federal rather than state) rests solely on the fact that the research project on which plaintiff was working and from which the data in the fateful article was derived, was federally funded. Plaintiff does not allege that the grant would not have been awarded to the New York University Biochemistry Department but for his appointment. Indeed the grant was an ongoing one whose inception predated plaintiff's appointment.

Naturally enough, the federal government imposed certain conditions on the beneficiaries of its largesse. Among those conditions were compliance on the part of the recipient institution with Title VI of the Civil Rights Act of 1964; disbursement of the funds solely for the project approved; continued responsibility on the part of the principal investigator (defendant Ochoa) for the conduct of the project; and frequent submissions of various fiscal reports. See 42 C.F.R. §§ 52.23, 52.24. Absent was any requirement that procedural due process be afforded to any participant in the project who might be severed from it.

Plaintiff takes the position that defendant Ochoa became an agent of the government by virtue of his accountability to it as principal investigator for the project, and thus that his allegedly arbitrary action amounted to state action. In addition, plaintiff urges that defendant New York University was performing a "public function" which transformed it into an arm of the state.

As I read the cases, they do not support a finding of state action based on facts such as these.

The leading case in this Circuit is *Powe v. Miles* (1968) 407 F.2d 73, very recently reaffirmed in *Grafton v. Brooklyn Law School et al.*, 478 F.2d 1137 (decided May 24, 1973). In *Powe*, students suspended from Alfred University as a result of their participation in a demonstration urged that their suspensions constituted "state action" and consequently were void for failure to comply with due process requirements. Judge Friendly in rejecting the students' argument stated that the essential point in regard to state action is that "the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. . . . State action would be . . . present here with respect to all the students if New York had undertaken to set policy for the control of demonstrations in all private universities . . . But the fact that New York has exercised some regulatory powers over the standard of education offered by Alfred University does not implicate it generally in Alfred's policies toward demonstrations and discipline." 407 F.2d at 81.

Judge Friendly did find that the suspensions of three students registered in the New York State College of Ceramics on the Alfred campus constituted state action "for the seemingly simple but entirely sufficient reason that the State has willed it that way" by enacting various legislation to retain significant control over the Ceramics College. (at 82).

Plaintiff seeks to analogize his position at New York University to that of the Ceramics College students in *Powe*, in that the federal government could "in the last analysis tell [NYU] not simply what to do but how to do it" (*Powe* at 83) just as the state could have controlled the Alfred Ceramics College. I find his position more analogous to those of the liberal arts students whose suspensions were held to be private rather than state action. The involvement of the government in the case at bar did not extend to the dictating of

policy regarding procedures by which faculty should be hired or fired. See Mulvihill et al. v. Butterfield Memorial Hospital et al. (S.D.N.Y.1971), 329 F. Supp. 1020.

Were plaintiff alleging some form of discrimination on the part of defendants, the very degree of governmental involvement I now hold insufficient to "carry on its back" the particular constitutional rights here advanced might well "rise to the level of 'state action'." *Grafton v. Brooklyn Law School, supra* at 1142 of 478 F.2d. Happily, no such allegation has been made in this case. Summary judgment is accordingly granted in defendants' favor.