John **MULVIHILL** et al., Plaintiffs,

v.

**JULIA L. BUTTERFIELD MEMORIAL HOSPITAL et al., Defendants.**

**No. 70 Civ. 5693.**

United States District Court,
S. D. New York.

May 5, 1971.

Emile Z. Berman and A. Harold Frost, New York City, for plaintiffs.

Benjamin B. Hersh, Peekskill, N. Y., for defendant Julia L. Butterfield Memorial Hospital.

METZNER, District Judge:

Julia L. Butterfield Memorial Hospital and the individual defendants move pursuant to Rule 12(b) (6), Fed.R.Civ.P., to dismiss the complaint for failure to state a claim upon which relief can be granted.

The plaintiffs are two physicians duly licensed by the State of New York. The defendant hospital is a private, nonprofit hospital incorporated under the laws of New York and located in the Village of Cold Spring, New York. The individual defendants comprise the board of directors and board of trustees of the hospital.

The plaintiffs are specialists in internal medicine. They were members of the medical staff of the hospital for the year 1969 and as such were entitled to the use of the hospital's facilities for

their patients. The Executive Committee of the Medical-Dental Staff of the hospital voted not to reappoint plaintiffs for the year 1970. This action was taken without notice to the plaintiffs or an opportunity to be heard. However, the procedures followed were in accordance with the bylaws of the hospital.

The plaintiffs claim that they have been denied equal protection of the laws and have been deprived of procedural due process by their discharge without notice or a hearing. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1343, 2201 and 2202. The relief sought is a declaratory judgment, a permanent injunction, reinstatement of plaintiffs to the hospital medical staff, and damages totaling $100,000 to each plaintiff.

■ The equal protection claim can be disposed of summarily. The plaintiffs nowhere assert that other doctors were given hearings before being denied reappointment or that it was the custom or policy of the hospital to give hearings. Therefore no denial of equal protection can be claimed, and insofar as plaintiffs' complaint is based on such a denial, it is dismissed.

The allegation that plaintiffs have been denied due process, however, creates a more difficult problem. The question is not, as defendants would have us believe, whether a doctor can ever be discharged from a hospital; the question is rather when a hospital will be required to afford a doctor the protections of procedural due process in deciding whether or not to sever him.

■ A private hospital is subject to the precepts of the Fourteenth Amendment only if its actions are tinged with some measure of state involvement. It is an uncontroverted principle that the action inhibited by the due process clause of the Fourteenth Amendment is only such action as may be said to be that of the states. The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). Private conduct abridging individual rights does not violate the Fourteenth Amendment "unless to some significant

extent the State in any of its manifestations has been found to have become involved in it." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

The question, therefore, becomes whether the State of New York is so associated with the conduct of Julia L. Butterfield Memorial Hospital that the hospital's action in discharging the two plaintiffs can be considered the action of the state.

■ There is no precise formula for determining whether state action is present. The influence and actions of the state permeate almost every phase of our lives. "In a sense, almost everything we do is in part the product of or is facilitated by some State action." Commonwealth of Pennsylvania v. Brown, 270 F.Supp. 782, 788 (E.D.Pa.1967), aff'd, 392 F.2d 120 (3d Cir.), cert. denied, 391 U.S. 921, 88 S.Ct. 1811, 20 L.Ed.2d 657 (1968). "Only by sifting and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, *supra*, 365 U.S. at 722, 81 S.Ct. at 860. Our inquiry must be directed at the whole course of conduct of the state with respect to the institution in question so as to determine how far the state has "insinuated itself" into a position of joint participation in the challenged activity. Burton v. Wilmington Parking Authority, *supra* at 725, 81 S.Ct. 856.

In the present case the plaintiffs assert that the requisite state involvement is found in the fact that Julia L. Butterfield Memorial Hospital received construction funds pursuant to the Hill-Burton Act, 42 U.S.C. § 291 et seq., and is subject to detailed regulation by the State of New York.

■ The Hill-Burton Act provides federal grants to state agencies to assist in creating statewide systems of hospital care to reach all the people of a state. The program was designed to induce the states to assume, as a state function, the burden of supervising the mainte-

nance and construction of hospitals throughout the state. Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959, 968 (4th Cir.), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). The money is funneled through the state agencies to individual hospitals which are engaged in building projects. A state, in order to qualify for funds, must have a statewide plan of hospital construction approved by the Surgeon General of the United States.

Participation in the Hill-Burton program subjects the hospital to an elaborate pattern of state and federal regulation. The hospital is required to meet minimum standards of operation and maintenance, which are enforced by the state. The Act provides for federal decision as to the number of hospital beds and other facilities required to provide adequate service in a state; and state allowances in terms of the number of beds per thousand population have been fixed by regulation, as have the methods to be used by state agencies in distributing hospitals in a state.

Furthermore, all hospitals in New York State, whether or not participants in the Hill-Burton program, are subject to intricate state regulation pursuant to the New York Public Health Law § 2800 et seq., McKinney's Consol.Laws, c. 45. State approval is required for incorporation or construction of a hospital. There are limitations on ownership and on solicitation of funds for hospitals. A hospital is required to admit all patients needing immediate care regardless of ability to pay. The state has the right to inspect hospitals, to establish rate schedules and operating standards, and to dictate accounting systems. A hospital may operate only after it has been certified by the state and is required to submit periodic reports to state officials.

There can be little doubt that the State of New York plays a substantial role in supervising the operations of private hospitals within its borders. However, this fact does not get us very far. The state, as part of its general regulatory scheme, does not in any way associate itself with or influence the internal decisions of a hospital's board of trustees to hire or fire staff members. The mere fact that New York regulates the facilities and standards of care of private hospitals or offers them financial support does not make the acts of these hospitals in discharging physicians the acts of the state. Such a blanket rule would overlook

> "the essential point—that the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968).

The plaintiffs in the present case fail to grasp this crucial distinction. In the cases they cite, the critical state involvement was in the very prohibited action under constitutional attack. In Simkins v. Moses H. Cone Memorial Hospital, *supra*, the State of North Carolina distributed Hill-Burton funds to a private, racially segregated hospital pursuant to a state policy of racial discrimination in hospitals within the state. This activity violated the equal protection clause since it was promoting the hospital's blatant and continuing discriminatory practices and was placing the state's power and prestige behind the hospital's segregationist policy. Such encouragement of prohibited conduct consistently has been held to amount to state action. Reitman v. Mulkey, 387 U.S. 369, 375, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Burton v. Wilmington Parking Authority, *supra*.

Another case involving the equal protection clause is Sams v. Ohio Valley General Hospital Ass'n, 413 F.2d 826 (4th Cir. 1969). There a private hospital receiving Hill-Burton funds refused to give staff privileges to doctors from other counties. Although this case concerned discrimination other than racial discrimination, it nonetheless involved state support to a hospital which arbi-

trarily denied its facilities to a segment of the population.

However, there is nothing in the language or logic of these cases to support the proposition that state action would have been present had the private hospitals in question discharged an employee without notice or a hearing. This is the conduct which is challenged in the present case, and the state is in no way involved in it.

Analogous to the present situation are cases dealing with state aid to and regulation of private educational facilities. The racial discrimination of private, segregated schools has been held to be infected with state action where the schools were partially supported by state funds as part of an attempt by the state to circumvent the dictates of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 687, 98 L.Ed. 873 (1954). Poindexter v. Louisiana Financial Assistance Comm'n, 275 F.Supp. 833 (E.D.La.1967), aff'd per curiam, 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968). However, the suspension or expulsion of students by private schools has been found not to involve state action even though similar financial aid and regulation by the state were present. Thus, in Bright v. Isenbarger, 314 F.Supp. 1382 (N.D.Ind. 1970), a private parochial school was given indirect financial assistance by the state, was regulated by the state as to course requirements, quality of teachers and physical plant, and prerequisites for graduation, and was required to hold itself open for periodic state inspection. Nonetheless, the court ruled that no state action was involved in the expulsion of students without notice or an opportunity to be heard. The court reasoned that although the state was associated with some aspects of the school's activities, the state in no way concerned itself with the school's disciplinary rules or methods. 314 F.Supp. at 1394.

The same result has been reached in several Second Circuit cases. In Powe v. Miles, *supra*, the court refused to find state action in the suspension of students from Alfred University, remarking that

"the fact that New York has exercised some regulatory powers over the standard of education offered by Alfred University does not implicate it generally in Alfred's policies toward demonstrations and discipline." 407 F.2d at 81. See also: Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969); Grossner v. Trustees of Columbia University in the City of New York, 287 F.Supp. 535 (S.D.N.Y. 1968).

There is no distinction between the private school cases discussed above and the case at bar. It is true that the state has "insinuated itself" into some aspects of the functioning of Julia L. Butterfield Memorial Hospital. But there is no charge here that the state in any way encouraged, promoted, supported, or associated itself with the hospital's rules and methods for choosing physicians. The state did not approve the hospital's internal bylaws; nor did any state nominees sit on the hospital's board of trustees. See Meredith v. Allen County War Memorial Hospital Comm'n, 397 F.2d 33 (6th Cir. 1968).

The purpose of New York's regulation of its private hospitals is to assure quality medical service throughout the state. Only in their dealings with the general public are private hospitals in New York affected by state laws. But the state has never shown an interest in supervising or influencing the purely internal affairs of these hospitals, and the courts of New York have emphasized that they will not interfere in decisions by private hospitals to hire, fire or discipline staff members as long as these decisions are in accordance with the hospitals' bylaws. Leider v. Beth Israel Hospital Ass'n, 33 Misc.2d 3, 229 N.Y.S.2d 134 (Sup.Ct. 1960), aff'd without opinion, 13 A.D.2d 746, 216 N.Y.S.2d 664 (1st Dept. 1961), aff'd per curiam, 11 N.Y.2d 205, 227 N.Y.S.2d 900, 182 N.E.2d 393 (1962); Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y.S. 554 (4th Dept. 1924), aff'd per curiam, 239 N.Y. 615, 147 N.E. 219 (1925).

Given this pattern of state financial support and regulation, the court finds

no state action involved in the refusal by Julia L. Butterfield Memorial Hospital to reappoint these two plaintiffs.

The motion to dismiss is granted with leave to replead if plaintiffs are so advised.

So ordered.