**Frances WAGNER**

v.

**Paul SHELTZ, Individually and in his capacity as Administrator of Manchester Nursing and Geriatric Manor, Manchester Manor, Inc., Edward Maher, Commissioner of the Department of Social Services, Douglas Lloyd, Commissioner of the Department of Health.**

Civ. No. H78–579.

United States District Court,
D. Connecticut.

May 18, 1979.

Sue Ann Shay, Neighborhood Legal Services, Hartford, Conn., for plaintiff.

Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn., for defendant Edward Maher.

Richard Lynch, Asst. Atty. Gen., Carl Ajello, Atty. Gen., Hartford, Conn., for defendant Douglas Lloyd.

Paul Zolan, Hartford, Conn., for defendants Paul Sheltz & Manchester Manor, Inc.

## RULING ON MOTIONS TO DISMISS AND FOR PRELIMINARY INJUNCTION

CLARIE, Chief Judge.

The plaintiff, a nursing home resident who is receiving federal assistance under the Medicaid program, challenges her threatened eviction by the defendant nursing home facility. Her complaint seeks relief under 42 U.S.C. § 1983 and 42 U.S.C. § 1396 *et seq.* and alleges, in addition thereto, a pendent state law claim. The Court finds that there is lacking sufficient indicia of state action, and therefore the complaint fails to state a claim under 42 U.S.C. § 1983. The Court further finds that those portions of the complaint which allege a violation of 42 U.S.C. § 1396 *et seq.*, assuming that a private cause of action may be brought under that statute, are deficient for failure to exhaust available state administrative remedies. Absent any valid federal law claim, the pendent state law claim must also be dismissed. Consequently, the plaintiff's motion for preliminary injunction is denied; and the defendants' motions to dismiss are granted.

### Statement of Facts

The plaintiff, Frances Wagner, is a 67 year old woman, who is receiving intermediate level care at the defendant Manchester Manor Nursing and Geriatric Home. Manchester Manor is reimbursed for the plaintiff's expenses at the nursing home through Title XIX of the Social Security Act, commonly known as the Medicaid program. On September 26, 1978 the plaintiff was orally informed by the defendant Paul Sheltz, administrator of Manchester Manor, that she would be discharged from the nursing home, because of her alleged persistent association with a very elderly male resident of the nursing home. Two days later Sheltz gave the plaintiff written notice that she would be discharged on October 28, 1978, because of her "incompatibility with the standards of Manchester Manor."

In her complaint the plaintiff alleges three causes of action against the defendants Sheltz and Manchester Manor: (1) they have not afforded her an opportunity to be heard prior to her eviction, in violation of 42 U.S.C. § 1983; (2) the basis for her threatened eviction is inadequate under the standards set by 42 U.S.C. § 1396 *et seq.* and the regulations promulgated thereunder; and (3) by continuing to threaten her with unlawful eviction, they have negligently and recklessly failed to properly safeguard her health and welfare. The plaintiff further alleges that the defendants Edward Maher, Commissioner of the Connecticut Department of Social Services, and Douglas Lloyd, Commissioner of the Connecticut Department of Health, should have issued regulations to insure that Medicaid recipients would be provided a hearing prior to an eviction from a nursing home. It was agreed between the parties that the eviction would be stayed pending resolution of these motions.[1]

### Jurisdiction

Subject matter jurisdiction over the § 1983 claims exists pursuant to 28 U.S.C. § 1343. Assuming that a cause of action exists under 42 U.S.C. § 1396 *et seq.*, subject matter jurisdiction over those claims would exist by virtue of 28 U.S.C. § 1331, since the requisite jurisdictional amount has been alleged.

### Discussion of the Law
*The § 1983 claims.*

Two elements are required to state a cause of action under § 1983: (1) the

1. A decision on the present motions was delayed several times at the request of the plaintiff's counsel, who represented that the plaintiff would be transferred from Manchester Manor for reasons other than those pertinent to this action, thereby rendering the present controversy moot. Such a transfer did not in fact transpire, and the Court therefore must now resolve this dispute.

plaintiff was deprived of some right secured by the Constitution and laws of the United States, and (2) the defendant must have acted under color of state law. *Adickes v. Kress,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Assuming, without deciding, that the plaintiff's interest in remaining at Manchester Manor is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, the Court finds that the second requirement has not been made out, even construing the complaint and supporting documents in the light most favorable to the plaintiff.

■ Neither Manchester Manor nor Paul Sheltz is an arm of the State of Connecticut. Whether their actions can be attributed to the State depends on the application of the state action doctrine. That doctrine has proceeded along two distinct lines. The "public function" strand of the state action limitation requires a finding that a private party has exercised "powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). The Supreme Court has only recently emphasized that the public function branch of the state action doctrine must be kept within "carefully confined bounds," generally limited to such functions as "education, fire and police protection, and tax collection." *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 163, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978).

This Court concurs with those which have noted that the functions of both hospitals and nursing homes have not been " 'traditionally associated with sovereignty;' " they "have long been relegated to the private domain, rather than treated as 'traditionally the exclusive prerogative of the State.' " *Schlein v. Milford Hospital, Inc.,* 561 F.2d 427, 429 (2d Cir. 1977), quoting from *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 353, 95 S.Ct. 449. *See also, Barrett v. United Hospital,* 376 F.Supp. 791, 799 (S.D.N.Y.1974), *aff'd mem.* 506 F.2d 1395 (2d Cir. 1974) ("Private hospitals are the rule rather than the exception."); *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689, 695 (N.D.Ohio 1977) (nursing home not a public function).

■ The second branch of the state action doctrine, which examines the degree of the State's involvement with the private activity, might be called the "nexus" approach. An analysis of the case law reveals that the Second Circuit has adopted a three-pronged test for determining the existence of state action under this approach: (1) the State's involvement with the private institution must be significant, (2) the State must be involved not merely with some activity of the private institution; it must be involved with the very activity which is the subject of the plaintiff's complaint, and (3) the State's involvement must aid, encourage, or connote approval of the activity. *Barrett v. United Hospitals, supra,* 376 F.Supp. at 797.

■ In applying this standard it is well to remember Judge Friendly's admonition, that classification of the particular constitutional right at issue "must be among the first, if not the very first," step in making the determination whether the conduct of a private party can be attributed to the State. *United States v. Solomon,* 509 F.2d 863, 871 (2d Cir. 1975). In view of the historical context of the Fourteenth Amendment, the Second Circuit will accept a lesser showing of State involvement if the case involves racial discrimination, than when a different constitutional violation is in issue. *Jackson v. Statler Foundation,* 496 F.2d 623, 629 (2d Cir. 1974), *cert. den.* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Grafton v. Brooklyn Law School,* 478 F.2d 1137, 1142 (2d Cir. 1973); *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir. 1968). Since there is no claim of racial discrimination in the present case, a more compelling showing of State involvement is required.

■ The only indicia of State involvement to which the plaintiff has alluded are the receipt of Medicaid funds and the pervasive State regulation to which Manchester Manor is subjected. Neither of these circumstances is, by itself, enough to subject nominally private action to the stric-

tures of the Fourteenth Amendment and § 1983. In a case where a university received approximately 40% of its income from public funds, the court held that "receipt of money from the State is not, without a good deal more, enough to make the recipient an agency of the government." *Grossner v. Trustees of Columbia University,* 287 F.Supp. 535, 548 (S.D.N.Y.1968). *See also Grafton v. Brooklyn Law School, supra,* 478 F.2d at 1142. Similarly the Supreme Court has held that regulation of the private entity by the State, even where that regulation is "extensive and detailed," does not by itself convert the action of the private party into that of the State. *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 345, 95 S.Ct. at 449, 42 L.Ed.2d at 477. *Accord Powe v. Miles, supra,* 407 F.2d at 81; *Taylor v. Consolidated Edison,* 552 F.2d 39, 45 (2d Cir. 1977), *cert. den.* 434 U.S. 845, 98 S.Ct. 147, 54 L.Ed.2d 111 (1977); *Graseck v. Mauceri,* 582 F.2d 203, 210 (2d Cir. 1978), *appeal pending.*

█ Moreover, the cases also indicate that even the combination of limited public funding and State regulation does not transmute private action into State action. *Grafton v. Brooklyn Law School, supra,* 478 F.2d at 1141–42; *Huff v. Notre Dame High School,* 456 F.Supp. 1145, 1148–49 (D.Conn. 1978); *Mulvihill v. Julia L. Butterfield Memorial Hospital,* 329 F.Supp. 1020, 1024 (S.D.N.Y.1971); *Schlein v. Milford Hospital, Inc., supra,* 561 F.2d at 428.

The plaintiff's argument that extensive State funding and regulation of the defendant nursing home mandates a finding of State action "overlooks the essential point—that the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity which caused the injury. Putting the point another way, the state action, not the private action, must be the subject of the complaint." *Powe v. Miles, supra,* 407 F.2d at 81. In other words, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 351, 95 S.Ct. at 453.

The plaintiff in the case at bar has not alleged any nexus whatsoever between the State and the private defendants' practice of evicting nursing home residents without a hearing. There is no allegation that any State nominees sit on Manchester Manor's board of directors or that the State has approved any by-laws with respect to this practice. *Cf. Mulvihill v. Julia L. Butterfield Memorial Hospital, supra,* 329 F.Supp. at 1024.

The plaintiff contends that the failure of the defendant Commissioners of Health and Social Services to adopt regulations mandating a hearing prior to evicting a nursing home resident implies State approval of the practice. Thus "the crux of the complaint is not that the State *has* acted, but that it has *refused* to act." *Flagg Brothers, Inc. v. Brooks, supra,* 436 U.S. at 166, 98 S.Ct. at 1738 (emphasis in original). Like the State's failure to require a pre-termination hearing for electric service in *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 355, 95 S.Ct. 449, and the State's failure to regulate the granting of the staff privileges in private hospitals in *Schlein v. Milford Hospital, supra,* 561 F.2d at 429 n. 6, the State's inaction in the present case does not connote authorization, encouragement or approval of the challenged practice. At most the State, by failing to require a hearing prior to eviction, has acquiesced in the private entity's conduct. The Supreme Court, however, "has never held that a State's mere acquiescence in a private action converts that action into that of the State." *Flagg Brothers, Inc. v. Brooks, supra,* 436 U.S. at 164, 98 S.Ct. at 1737.

It might be argued that the necessary nexus between the State and the private conduct is supplied by Conn.Gen.Stat. § 19–622, the so-called "patients' bill of rights." That section provides, *inter alia,* that a Medicaid patient may be transferred from a nursing home only for medical reasons, or for his welfare or that of other patients,

and that he must be given thirty days' notice of any proposed transfer.[2] While this requirement may implicate the State in the transfer of patients, the courts have recognized that there is a distinction between a regulatory scheme in which the private institution plays a part in an offensive government policy and one which is designed to prevent the institution's acting in an abusive manner. *Barrett v. United Hospital, supra,* 376 F.Supp. at 804; *Shirley v. State National Bank of Conn.,* 493 F.2d 739, 742 (2d Cir. 1974), *cert. den.* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *Watson v. Kenlick Coal Co., Inc.,* 498 F.2d 1183, 1192 (6th Cir. 1974), *cert. den.* 422 U.S. 1012, 95 S.Ct. 2639, 45 L.Ed.2d 677 (1975). As was true of the State regulations in those cases, the patients' bill of rights does not encourage arbitrary evictions; the statute restricts, rather than expands, a nursing home's ability to transfer or discharge a patient.

Since the operation of a nursing home does not constitute a public function and because there is lacking the necessary nexus between the private action and the State, the Court finds that there is no state action in the private defendants' decision to evict the plaintiff. This conclusion is consistent with *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689 (N.D.Ohio 1977), a case on all fours with the present one, which reached the same result. Consequently, the motions of the defendants Paul Sheltz and Manchester Manor to dismiss the § 1983 causes of action are granted.

The plaintiff has also alleged that the failure of the defendant Commissioners of Health and Social Services to require a hearing prior to eviction constitutes a violation of § 1983. It is clear that action taken by these two individuals would constitute state action. However, they are not subject to liability under § 1983, because they had no legal duty to enact any regulations regarding the private nursing homes' transfer and discharge procedures. As the foregoing discussion indicates, the Due Process Clause imposes no restraints on the actions of the private entity in the circumstances of this case. Nor is there any federal statutory or regulatory requirement that the State set up a hearing procedure to review a private nursing home's decision to transfer or discharge a patient. All federal hearing rights for Medicaid recipients are found exclusively in 45 C.F.R. § 205.10(a)(5). The clear language of that section indicates that the recipient is entitled to a hearing only to contest action by a State agency:

> "An opportunity for a hearing shall be granted to any applicant who requests a hearing because his claim for financial or medical assistance is denied, or is not acted upon with reasonable promptness, and to any recipient who is aggrieved by any *agency action* resulting in suspension, reduction, discontinuance or termination of assistance." (emphasis supplied).

Since the plaintiff has not alleged that she was denied Medicaid benefits or that her request for such benefits was not acted upon with reasonable promptness, the first portion of this regulation is inapplicable. The second portion comes into play only where the decision to reduce or terminate Medicaid benefits is made by the state agency, and it is clear that the private nursing home is not an agency of the State.[3] Thus there is no provision of federal law which would require the defendant Commissioners of Health and Social Services to set up a hearing procedure under the circumstances of this case. Consequently,

---

**2.** The plaintiff does not dispute that she was given the requisite 30-day notice.

**3.** The defendants Paul Sheltz and Manchester Manor have represented to the Court that they will not turn the plaintiff out into the street; rather they intend to transfer her to another nursing home which offers appropriate care.

Therefore, even if Manchester Manor were a state agency, it would not be clear that 45 C.F.R. § 205.10(a)(5) would be applicable, since that provision operates only when there has been a reduction or termination of Medicaid benefits.

the motion to dismiss the complaint against the defendant Commissioners is granted.[4]

*The Claims under 42 U.S.C. § 1396 et seq.*

In addition to her § 1983 claim, the plaintiff seeks to bring a cause of action under the Medicaid statute, 42 U.S.C. § 1396 *et seq.* Specifically, the plaintiff claims that her threatened transfer violates 45 C.F.R. § 249.12(a)(1)(B)(4), which was promulgated pursuant to 42 U.S.C. § 1396d(c). That provision of the Code of Federal Regulations stipulates that an intermediate health care facility, such as Manchester Manor, must ensure that every resident admitted to the facility

"(4) Is transferred or discharged only for medical reasons or for his welfare or that of other patients, or for nonpayment for his stay (except as prohibited by the Title XIX program)."

The first question this claim raises is whether a private cause of action can be implied from 42 U.S.C. § 1396 *et seq.* The only court to explicitly rule on this issue has held that no private cause of action may be brought under that statute. *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689, 696–698 (N.D.Ohio 1977).[5] The Supreme Court has suggested that four inquiries be made, in deciding whether a private remedy is implicit in a statute which does not expressly provide for one:

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply a remedy for the plain-

tiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). (citations omitted).

This Court concurs with the opinion of the district court in *Fuzie v. Manor Care* that the application of the *Cort v. Ash* criteria leads to the conclusion that no cause of action may be implied from the Medicaid statute. In the interest of economy, that court's well-reasoned analysis will not be repeated here. *See* 461 F.Supp. at 696–98.

Even assuming *arguendo* the existence of a cause of action under 42 U.S.C. § 1396 *et seq.,* this Court would decline to exercise jurisdiction over such a claim in this case, because of the plaintiff's failure to exhaust her administrative remedies. The State of Connecticut has recently enacted an elaborate administrative scheme for handling disputes like the present one. That legislation established a nursing home ombudsmen office, comprised of a State ombudsman and five regional ombudsmen, within the State Department on Aging to resolve complaints affecting residents of nursing homes. Conn.Gen.Stat. § 17–135a *et seq.* Complaints are initiated with patients' advocates, who are appointed by the State ombudsman to serve nursing home residents in the region of the State where the advocate resides. Conn.Gen.Stat. § 17–135b. The complaint is referred by the patient advocate to the regional ombudsman, who conducts an investigation of the complaint. Conn.Gen.Stat. § 17–135f. Upon investigation the regional ombudsman may direct the complaint to the State ombudsman for further action, Conn.Gen.

---

4. It is not clear whether the plaintiff makes this claim against the defendant Commissioners pursuant to § 1983 or pursuant to 42 U.S.C. § 1396 *et seq.* In either event, the foregoing analysis would require dismissal.

5. The plaintiff has cited three cases in support of an implied cause of action under 42 U.S.C. § 1396 *et seq. Doe v. Beal,* 523 F.2d 611 (3rd Cir. 1975); *Stanton v. Bond,* 504 F.2d 1246 (7th

Cir. 1974); *Smith v. Vowell,* 379 F.Supp. 139 (W.D.Tex.1974), *aff'd mem.* 504 F.2d 759 (5th Cir. 1974). Each of these cases was brought pursuant to 42 U.S.C. § 1983, not under 42 U.S.C. § 1396 *et seq.* Consequently, there was subject matter jurisdiction under 28 U.S.C. § 1343. The courts therefore never addressed the question whether a cause of action may be implied from 42 U.S.C. § 1396 *et seq.*

Stat. § 17–135f, or the patient advocate may report directly to the Commissioner of Health. Conn.Gen.Stat. § 17–135g(b). The Commissioner of Health has the authority to issue a citation to the nursing home, if he finds that there has been a violation, and a civil penalty may be imposed, with an additional penalty for each day the violation is not corrected. Conn.Gen.Stat. §§ 19–607, 19–609. There is provision for an administrative hearing with ultimate review by the State courts if the nursing home contests the issuance of the citation. Conn.Gen.Stat. §§ 19–608, 19–612.

The plaintiff's argument that these procedures are not relevant to this case, because they govern only violations of the public health and fire codes, is not well taken. The patient advocates are charged with assuring that all "provisions of the patients' bill of rights are adhered to properly," as well as aiding patients in "administrative procedures relating to transfers and discharges." Conn.Gen.Stat. §§ 17–135g(a)(10), (12). Moreover, Conn.Gen.Stat. § 19–607 specifically empowers the Commissioner of Health to issue citations for violations of Conn.Gen.Stat. § 19–622, the patients' bill of rights. In fact, the defendants have submitted to the Court a copy of a letter sent by the Connecticut Department of Health to the defendant Sheltz, informing him that the proposed transfer or discharge is in violation of Conn.Gen.Stat. § 19–622(d), which prohibits transfer or discharge except for medical reasons or for the patient's welfare or that of other patients. Thus, the administrative procedure envisioned by the statute has already begun.

■ For this Court to assume jurisdiction over this case at a time when the administrative remedies have not run their course would run afoul of the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). The reasons behind this rule were enumerated in *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969): a reluctance to prematurely interrupt the administrative process, appropriate deference to the expertise of the administrative agency and a desire to have a complete administrative record. All of these considerations are subsumed in Chief Justice Burger's observation that: "Exhaustion is simply one aspect of allocation of overtaxed judicial resources." *Moore v. East Cleveland,* 431 U.S. 494, 524, 97 S.Ct. 1932, 1948, 52 L.Ed.2d 531 (1977) (Burger, C. J., dissenting). Accordingly, even if the plaintiff had a cause of action under 42 U.S.C. § 1396, *et seq.,* the Court would decline to exercise jurisdiction over the case until the plaintiff had exhausted her administrative remedies.[6] The defendants' motions to dismiss the cause of action under 42 U.S.C. § 1396, *et seq.,* are therefore granted.

*The Pendent State Claim.*

■ The plaintiff's third cause of action alleges that the defendants Sheltz and Manchester Manor have continued to threaten her with eviction, knowing that such conduct might cause danger to her life and health. The plaintiff does not assert that this conduct implicates any federal right, but asks this Court to assume pendent jurisdiction over the state law claim. The anomaly of a federal court dismissing the federal aspects of the case and then retaining jurisdiction over the state law claim under the doctrine of pendent jurisdiction has been noted elsewhere:

" 'Where the federal element which is the basis for jurisdiction is disposed of early

---

**6.** The defendant Manchester Manor has represented that it will not act to discharge or transfer the plaintiff until the investigation of the Commissioner of Health has been completed. Thus, the plaintiff is not faced with immediate eviction, if this Court fails to grant relief. If the plaintiff were subject to immediate eviction despite the pending investigation by the Commissioner of Health, that circumstance might create an exception to the exhaustion requirement, namely that the available administrative remedy was inadequate. *See Ogletree v. McNamara,* 449 F.2d 93, 99 (6th Cir. 1971).

in the case, as on the pleadings, it smacks of the tail wagging the dog to continue with a federal hearing of the state claim.'" *McFaddin Express, Inc. v. Adley Corporation*, 346 F.2d 424, 427 (2d Cir. 1965), *cert. den.* 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966), quoting from A.L.I., Study of the Division of Jurisdiction Between State and Federal Courts. (Tent. Draft No. 3, 1965) at p. 59.

Since none of the plaintiff's federal claims are meritorious, the pendent state claims will also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Gentile v. Wallen*, 562 F.2d 193, 198 (2d Cir. 1977).

Accordingly, the plaintiff's motion for a preliminary injunction is denied, and the defendants' motions to dismiss the complaint are granted. SO ORDERED.