**George SALAS, individually and as Personal Representative of the Estate of Della Salas, deceased; Norma P. Dougherty, by and through her next friend and daughter Luanna Clapper; Luanna Clapper, individually and as Personal Representative of the Estate of Frank Lynn Dougherty, deceased; Lydia B. Dill, by and through her next friend and daughter Joyce Lang, on behalf of themselves and others similarly situated, Plaintiffs–Appellants,**

v.

**GRANCARE, INC., and AMS Properties, Inc., d/b/a Cedars Health Care Center, Inc., Defendants–Appellees.**

**No. 99CA0089.**

Colorado Court of Appeals, Division IV.

Jan. 4, 2001.

Rehearing Denied March 22, 2001.

Feiger & Collison, P.C., Lynn D. Feiger, Madeline A. Collison, Joan M. Bechtold, Brian T. Moore, Denver, CO; Roberts & Zboyan, P.C., Thomas L. Roberts, Denver, CO, for Plaintiffs–Appellants.

White and Steele, P.C., Thomas B. Quinn, Denver, CO; Preston & Cowan, LLP, Paul G. Preston, New Orleans, LA, for Defendants–Appellees.

Gill Deford, Willimantic, CT, for Amicus Curiae Center for Medicare Advocacy.

Dorothy Siemon, Sarah Lenz Lock, Bruce Vignery, Michael Schuster, Washington, DC, for Amicus Curiae AARP Foundation.

Opinion by Judge MARQUEZ.

In this class action, plaintiffs, George Salas, Norma P. Dougherty, Luanna Clapper,

and Lydia B. Dill, on behalf of themselves, their decedents, and others similarly situated, appeal the judgment dismissing their claims against defendants, Grancare, Inc. (Grancare), and AMS Properties (AMS), d/b/a Cedars Health Care Center, Inc (Cedars), on the ground that the trial court lacked jurisdiction because of plaintiffs' failure to exhaust administrative remedies. We reverse and remand for further proceedings.

AMS owns, operates, and manages Cedars, a nursing home in Lakewood. Plaintiffs (or their decedents) are current and former residents of Cedars. Before providing services to plaintiffs, Cedars entered into separate resident admission agreements with each of them. The agreements indicate that Cedars participates in the Medicare program, *see* 42 U.S.C. § 1395, et seq. (1994)(Medicare Act), and that Medicare coverage is established by federal guidelines. The agreements also indicate that Cedars participates in the Medicaid program, *see* 42 U.S.C. § 1396, et seq. (1994)(Medicaid Act), and provides Medicaid beneficiaries with all services required by law.

Dissatisfied with Cedars' services, plaintiffs filed this action, claiming that they had received and continue to receive inadequate care and services, including: 1) medical and nursing services that are inadequate to promote the maintenance or enhancement of the quality of life of each resident; 2) care that does not currently comply with state and federal regulations; 3) an unclean, unsanitary, and unsafe environment; 4) an overworked and underpaid staff; 5) the improper use of physical and chemical restraints; and 6) other improper care.

Plaintiffs asserted the following claims for relief: 1) third-party beneficiary claim for breach of Medicaid/Medicare contracts (against all defendants); 2) breach of contract (against all defendants); 3) intentional interference with contractual obligations (against GranCare); 4) fraudulent misrepresentation (against all defendants); 5) negligence *per se* (against all defendants); and 6) violation of the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S.2000 (CCPA)(against all defendants) on behalf of the named plaintiffs only. Plaintiffs' third amended complaint sought restitution, compensatory damages including emotional distress damages, statutory damages under the CCPA, and declaratory and injunctive relief.

Following a hearing on the issue of class certification, the trial court defined one class and two subclasses. As part of its class certification order, the court found that plaintiffs seek a refund of the amounts that they paid, or that were paid on their behalf, while they were residents at Cedars and that they do not seek damages for any individual physical harm they may have suffered as a result of this alleged mistreatment. The court concluded that the third-party beneficiary, breach of contract, tortious interference, fraud, and negligence *per se* claims should proceed as class claims on liability and restitution only. It also struck plaintiffs' request for declaratory and injunctive relief.

Defendants then filed a motion to dismiss all of plaintiffs' claims asserting, *inter alia,* that the trial court lacked jurisdiction under the applicable state and federal statutes to hear disputes involving Medicare and Medicaid. Defendants also filed a motion for summary judgment precluding recovery of Medicaid funds.

The trial court concluded after a hearing that some of plaintiffs' claims arose under the Medicare and/or Medicaid Acts and had to be dismissed for failure to exhaust administrative remedies. It also concluded that plaintiffs could not recover restitution in their tort claims for tortious interference, fraud, or negligence *per se.* The court disagreed with defendants that the remedy of restitution was not available to plaintiffs on their contract-based claims and held that those claims had not been waived. It also rejected defendants' argument that the CCPA did not apply to the allegations in this case.

The court then dismissed for lack of jurisdiction the claims of all plaintiffs who were at all times Medicare or Medicaid patients and who did not contribute any of their own private funds toward their care. It concluded, however, that the remaining plaintiffs could seek restitution and damages for emotional distress only for the period beginning

with their stay at Cedars and ending when they first received any Medicare or Medicaid benefits. Under the order, no restitution was to be available on the claims for tortious interference, fraud, and negligence *per se.*

The court subsequently certified as a final judgment pursuant to C.R.C.P. 54(b) that portion of its order dismissing for lack of jurisdiction all the claims of plaintiffs who were at all relevant times Medicare or Medicaid patients. The certification did not encompass any other portions of the order and specifically did not encompass part III of the order ruling that remaining plaintiffs could not proceed with restitution on their tortious interference, fraud, and negligence *per se* claims. Those rulings not certified pursuant to C.R.C.P. 54(b) are not before us in this appeal.

Plaintiffs appealed the court's judgment, but the appeal was automatically stayed when defendants filed a suggestion of bankruptcy. The United States Bankruptcy Court for the District of Delaware later entered an order modifying the stay for the purpose of allowing plaintiffs to proceed with their appeal. Subsequently, the appeal was recertified for our review.

At oral argument, plaintiffs' counsel stated that all of their claims had been dismissed. However, our review of the trial court's order indicates that the court rejected defendants' arguments that plaintiffs could not proceed with their contract-based claims and that plaintiffs' claims under the CCPA were precluded. Thus, our understanding of the court's order is that plaintiffs' claims for breach of contract and violation of the CCPA were not dismissed and remain subject to further proceedings in the trial court. Consequently, only plaintiffs' tort claims are at issue on appeal. Further, the plaintiffs before this court are limited to those who were at all relevant times Medicare or Medicaid patients.

### I. Failure to Exhaust

Plaintiffs contend that they were not required to exhaust administrative remedies under the Medicare or Medicaid Acts before they could proceed on their tort claims. We agree.

### A. Standard of Review

Motions to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim are viewed with disfavor. *Dunlap v. Colorado Springs Cablevision, Inc.,* 829 P.2d 1286 (Colo.1992). When reviewing such a motion, a court must accept as true the allegations of the complaint, under any theory of law, and determine whether the plaintiff is entitled to relief. *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095 (Colo.1995). It is appropriate to grant the motion only if there is no set of facts that the plaintiff could prove upon which relief could be granted. *McIntosh v. Board of Education of School District No. 1,* 999 P.2d 224 (Colo.App.2000).

Summary judgment is a drastic remedy that is warranted only on a clear showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *AviComm, Inc. v. Colorado Public Utilities Commission,* 955 P.2d 1023 (Colo.1998). Appellate review of a judgment granting a motion for summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

Although the trial court addressed both motions, it did not distinguish the standards applied and essentially treated the questions presented as questions of law. Because defendants do not contest the factual allegations of the complaint and because it does not appear that there are any disputed issues of material fact, we proceed on the same basis.

### B. Statutory Framework for Exhaustion Requirement

The doctrine of exhaustion of administrative remedies serves as a threshold to judicial review and requires parties in a civil action to pursue available statutory administrative remedies before filing suit in district court. If the parties fail to satisfy the exhaustion requirement, the court is without jurisdiction to hear the action. *State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo.1998).

Here, in concluding that plaintiffs were required to exhaust their administrative remedies, the trial court relied on the implementing regulations and comprehensive substantive standards of the Medicare and Medicaid Acts governing a patient's care. Thus, we turn to a review of those standards.

### 1. Federal Statutes

Medicare is a federally-funded program, administered by the Department of Health and Human Services (HHS), that provides insurance benefits for persons 65 or older and for disabled individuals by making payments to health care providers. *See* 42 U.S.C. § 1395, et seq.

Medicaid is a jointly-funded federal and state program that pays for health care services provided to needy individuals. *See* 42 U.S.C. § 1396, et seq. If a state chooses to participate in the Medicaid program and complies with the requirements of the Medicaid Act, the federal government provides funds that partially reimburse the state for payments to or on behalf of persons whose income and resources are insufficient to meet the costs of necessary medical services.

To participate in the Medicare and Medicaid programs, a nursing home must comply with health, safety, and administrative standards established by statute, *see* 42 U.S.C. §§ 1395i–3(a)–(d) & 1396r(a)–(d), and the implementing regulations set forth in 42 C.F.R. part 483, subpart B. *See Michigan Ass'n of Homes & Services for the Aging, Inc. v. Shalala,* 931 F.Supp. 1338 (E.D.Mich.1996).

The Medicare and Medicaid Acts are read as part of the Omnibus Reconciliation Act of 1987, 42 U.S.C. §§ 1395i–3 and 1396r. Congress passed the Nursing Home Reform Law (NHRL), 42 U.S.C. § 1396r, in 1987 as part of the Omnibus Act. Under the NHRL and implementing regulations, standards were imposed on participating nursing homes regarding patient care. These included procedures for survey, certifications, and administrative review, and provisions for sanctions. *See generally* Boerstler & Nolte, *Colorado Nursing Homes: Litigation and Public Policy Issues Concerning Abuse and Neglect,* 29 Colo.Law. 93 (Sept.2000)(discussing regulation of nursing homes and the case at issue here).

### a. Medicare

■ The Medicare Act incorporates by reference the judicial review provisions of the Social Security Act, 42 U.S.C. §§ 405(g) and 405(h)(1998). 42 U.S.C. § 1395cc(h)(1). Section 405(g) is the sole avenue for judicial review for all claims arising under the Medicare Act. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

In relevant part, § 405(g) provides that:

Any individual, after any final decision of the Commissioner of Social Security made *after* a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days ... or within such further time as the Commissioner of Social Security may allow.... The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive .... (emphasis added)

Facilities, such as Cedars, found to be out of compliance with Medicare requirements are subject to sanctions, which include the denial of payment for Medicare patients, the imposition of civil money penalties of up to $10,000 per day, or the termination of the facility's participation in Medicare. 42 U.S.C. §§ 1395i–3(h) & 1396r(h). The statute gives the Secretary of Health and Human Services great discretion to fashion remedies, stating that: "Nothing in this subparagraph shall be construed as restricting the remedies available to the secretary to remedy a ... facility's deficiencies." 42 U.S.C. § 1395i–3(h)(2)(A).

### b. Medicaid

■ Medicaid, unlike Medicare, does not incorporate the exhaustion requirements of 42 U.S.C. §§ 405(g) and 405(h). However, because Medicaid is a program implemented by the federal and state governments jointly, state-imposed administrative remedies come into play. *See Wagner v. Sheltz,* 471 F.Supp. 903 (D.Conn.1979); *Medicaid, Program Integrity, Department of Health & Rehabilitative Services v. Conval–Care, Inc.,* 636 So.2d 117 (Fla.App.1994).

### 2. State Statutes

In pertinent part, the Medicare and Medicaid Acts both provide that:

The State shall provide, through the agency responsible for surveys and certification of nursing facilities ... for a process for the receipt and timely review and investigation of allegations of neglect and abuse....

42 U.S.C. §§ 1395i–3(g)(1)(C) & 1396r(b)(1)(C). Pursuant to this mandate, Colorado adopted § 25–1–120, et seq., C.R.S. 2000.

Under § 25–1–120(3)(d), a nursing facility resident may formally complain about any conditions, treatment, or violations of his or her rights. This section also provides that complaints are to be submitted to the designee of the facility. If the resident is dissatisfied with the findings and remedies, he or she may then present the same grievance orally or in writing to a grievance committee. Section 25–1–120(3)(e). If still dissatisfied with the findings and remedies of the committee, the complainant may file the same grievance with the Colorado Department of Public Health and Environment (DPHE) executive director. Section 25–1–120(5).

Also, Colorado has enacted § 25–1–107.5(4)(c), C.R.S.2000, which provides in pertinent part that the DPHE may distribute funds to pay costs to relocate residents to other facilities or to "[r]eimburse residents for personal funds lost."

### C. "Arising Under"

■ In order for the Medicare exhaustion requirements to apply, a claim must arise under the Medicare Act. While only Medicare uses the term "arising under," *see* 42 U.S.C. § 405(h), with certain exceptions, we agree with courts in other jurisdictions that administrative remedies must also be exhausted before bringing a claim that arises under Medicaid. *See Wagner v. Sheltz, supra; MacLeod v. Miller,* 44 Colo.App. 313, 612 P.2d 1158 (1980); *Medicaid, Program Integrity, Department of Health & Rehabilitative Services v. Conval–Care, Inc., supra.*

■ A claim "arising under" the Medicare Act includes any claim in which both the standing and the substantive basis for the presentation of the claim is the Act. A claim may arise under the Act when it is inextricably intertwined with a claim for benefits. *Heckler v. Ringer, supra.*

However, cases addressing exhaustion of administrative remedies in this area chiefly involve requests for reimbursement of benefits brought by individuals seeking coverage for benefits or expenses claimed under the Medicare or Medicaid Acts. *See Heckler v. Ringer, supra; Redmond v. Secure Horizons, Pacificare, Inc.,* 60 Cal.App.4th 96, 70 Cal.Rptr.2d 174 (1997). Here, plaintiffs do not seek that form of reimbursement in connection with their common law tort claims. Instead, as we interpret their position in the trial court and in this court, plaintiffs seek to recover monies paid by them or on their behalf.

Thus, plaintiffs are not requesting payment of benefits or reimbursement for a denied coverage under either the Medicare or Medicaid Acts. Nor are their claims inextricably intertwined with a claim for benefits. *See Plocica v. Nylcare of Texas, Inc.,* 43 F.Supp.2d 658 (N.D.Tex.1999); *Zamora–Quezada v. Healthtexas Medical Group,* 34 F.Supp.2d 433 (W.D.Tex.1998).

Consequently, even if we assume that plaintiffs' claims are based to some extent on the Medicare and Medicaid Acts, and in that sense "arise under" those Acts, the remedy they seek is not available through Medicare's or Medicaid's administrative processes. Resort to administrative processes would have been futile, and could not operate as a precondition for plaintiffs' suit here. *See Golden's Concrete Co., supra.* Accordingly, the court erred in dismissing their claims on this ground.

Whether plaintiffs are entitled to the remedy they seek presents a different question. Because the trial court's C.R.C.P. 54(b) certification order did not encompass its ruling that the remaining plaintiffs could not proceed with restitution, we do not address the appropriateness of restitution as a remedy.

### II. Other Contentions

In view of our disposition above, we do not address plaintiffs' contention that, because

their complaint is not against the Secretary of Health and Human Services or her employees or agents, they are not required to exhaust administrative remedies.

Accordingly, the judgment as it pertains to the issues certified for review is reversed, and the cause is remanded for further proceedings.

HUME, C.J., and DAILEY, J., concur.