The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 2, 2020

**2020COA102**

**No. 19CA0660, *Boyle v. Bristol West Insurance* — Insurance — Automobile Insurance Policies — Uninsured/Underinsured**

A division of the court of appeals concludes for the first time that a passenger in a motor vehicle involved in a road rage incident is not "using" that vehicle for purposes of underinsured motorist coverage when he gets out of the vehicle to confront the driver of the other vehicle.

Court of Appeals No. 19CA0660
Mesa County District Court No. 18CV30170
Honorable Brian J. Flynn, Judge

Robert Boyle,

Plaintiff-Appellant,

v.

Bristol West Insurance Company,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE TOW
Román and Pawar, JJ., concur

Announced July 2, 2020

Killian Davis Richter & Mayle, P.C., Nicholas W. Mayle, Benjamin P. Meade, Joseph H. Azbell, Grand Junction, Colorado, for Plaintiff-Appellant

White and Steele, P.C., Joel N. Varnell, E. Catlynne Shadakofsky, Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Robert Boyle, appeals the district court's summary judgment in favor of defendant, Bristol West Insurance Company (Bristol West).  This appeal requires us to decide, apparently for the first time, whether a passenger in a motor vehicle involved in a road rage incident is "using" that vehicle for purposes of underinsured motorist coverage if he is injured after getting out of the vehicle to confront the driver of the other vehicle.  Because we conclude that Boyle was not using the vehicle when he was struck by the other vehicle, we affirm.

## I.    Background

¶ 2    This case comes to us after the district court resolved competing motions for summary judgment.  As a result, we glean the following facts from the undisputed facts set forth in the parties' motions.

¶ 3    Boyle was a passenger in a Toyota insured by Bristol West. The Toyota and another vehicle, a Jeep, were involved in an incident of road rage, during which both vehicles were driven aggressively, cutting each other off and suddenly braking in front of each other.  When the Toyota came to a red light, the Jeep stopped behind the Toyota.  Boyle got out of the Toyota and approached the

1

Jeep. As the driver of the Jeep made a U-turn, the Jeep struck Boyle and dragged him for some distance, causing Boyle severe injuries.

¶ 4 The Toyota owner's insurance policy included uninsured motorist coverage, and it insured any "person while occupying, maintaining or using [the owner's] covered auto . . . ." After settling for the respective policy limits with both his own insurer and with the insurer of the Jeep, Boyle sought underinsured motorist benefits from Bristol West.[1] Bristol West denied his claim.

¶ 5 Boyle filed a complaint for declaratory judgment in district court. The parties filed cross-motions for summary judgment. The district court granted Bristol West's motion, ruling that, because Boyle was not "using" the Toyota when he was injured, he was not entitled to benefits from Bristol West.[2] The district court denied Boyle's motion.

---

[1] Uninsured motorist coverage includes underinsured motorist coverage. § 10-4-609(4), C.R.S. 2019.
[2] Boyle has never contended that he was either "occupying" or "maintaining" the Toyota at the time of the incident.

## II. The District Court Did Not Err by Granting Bristol West's Motion for Summary Judgment

¶ 6    Boyle contends that the district court erred by granting Bristol West's motion for summary judgment because Boyle "used" the Toyota when he was injured.[3]  We disagree.

### A.    Standard of Review

¶ 7    We review de novo an order granting a motion for summary judgment.  *Salas v. Grancare, Inc.*, 22 P.3d 568, 571 (Colo. App. 2001).  Summary judgment is appropriate only when the pleadings and supporting documents fail to establish a genuine issue of material fact and there is a clear showing that the moving party is entitled to summary judgment as a matter of law.  *Id.*

### B.    Applicable Law

¶ 8    In Colorado, automobile insurers must include coverage for injuries "arising out of the ownership, maintenance, or use of a motor vehicle" caused by uninsured motorists, unless such coverage is rejected in writing by the named insured. § 10-4-609(1)(a), C.R.S. 2019.  As noted, the Bristol West policy on

---

[3] Boyle raises three overlapping issues on appeal pertaining to the motion for summary judgment.  Accordingly, we address them together.

3

the Toyota included such coverage. Our supreme court has articulated a two-prong test for determining when injuries arise out of the use of a motor vehicle. *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1261-65 (Colo. 2003).

¶ 9 The first prong focuses on the "use" of a motor vehicle. *Id.* at 1261-63. The vehicle's use at the time the injuries were suffered must have been conceivable to the parties at the time of contracting and not foreign to the vehicle's inherent purpose. *Id.* at 1262. Some motor vehicles may have conceivable uses beyond mere transportation. *Id.* at 1262-63; *see also Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 94-103 (Colo. 1995) (determining that a road construction worker who was using his truck as a barricade while he sawed concrete barriers in the median of a highway some distance in front of his truck was "using" his vehicle as contemplated by the uninsured motorist policy where the vehicle had a factory-equipped overhead beacon and emergency flashers); *Trinity Universal Ins. Co. v. Hall*, 690 P.2d 227, 231 n.4 (Colo. 1984) (using a vehicle to sell food and drink was a conceivable use where the vehicle had been factory-modified for use as a catering truck and mobile refreshment stand); *Titan Constr. Co. v. Nolf*, 183 Colo.

4

188, 193-94, 515 P.2d 1123, 1125-26 (1973) (unloading and loading cement from a ready-mix cement truck constituted a use within the meaning of a liability-to-third-persons policy provision because such use was inherent in the nature of the vehicle). However, with respect to noncommercial passenger vehicles, the only conceivable use that is not foreign to their inherent purpose is use as a means of transportation, unless an insurance policy provides otherwise. *Kastner*, 77 P.3d at 1262.

¶ 10    The second prong, which has two parts, concerns the "arising out of" component — i.e., the causal connection between the motor vehicle's use and the injuries suffered. *Id.* at 1263-65. First, the claimant must show that but for the use of the motor vehicle, the injuries would not have occurred. *Id.* at 1264. Second, the claimant must show that there was an unbroken causal chain between the use of the vehicle and the claimed injuries. *Id.* Thus, the use of the vehicle and the injuries must be directly related or inextricably linked such that no independent significant act or non-use of the vehicle interrupted the "but for" causal chain between the vehicle's use and the injuries suffered. *Id.*

## C. Boyle's Injuries Did Not Arise Out of the Use of the Toyota

### 1. Boyle's Association With the Vehicle Does Not Establish Use of the Vehicle

¶ 11      Relying on *Cung La v. State Farm Automobile Insurance Co.*, 830 P.2d 1007 (Colo. 1992), Boyle first contends that he was using the Toyota because he was targeted for the assault as a result of his connection with the vehicle. But Boyle misreads *Cung La.*

¶ 12      In *Cung La,* the victim was driving the insured vehicle when he was shot by a passenger in another car. *Id.* at 1008.[4] The victim had been identified by his assailants because his vehicle, a white Mustang, had driven away from a recent altercation. *Id.* But our supreme court did not determine that the victim in *Cung La* was using his car because of his association with it. Rather, the court held that the victim was using the car because "the [victim] was driving and operating the vehicle in a manner not foreign to its inherent purpose."[5] *Id.* at 1012. Our supreme court has since

---

[4] The assailants' vehicle was considered an uninsured vehicle under the applicable policy because the owner or driver of that vehicle was unknown. *Cung La v. State Farm Auto. Ins. Co.,* 830 P.2d 1007, 1008 n.3 (Colo. 1992).

[5] Although the court held that the victim was using his car, the case was ultimately remanded for a jury to determine "whether the

6

stated that the *Cung La* court "assumed that the assailants and the insured were 'using' their cars as contemplated by the insured's policy since the cars were moving at the time of the shooting." *Kastner*, 77 P.3d at 1265. Here, in contrast, the Toyota was not moving, nor was Boyle in the Toyota when he was injured. Therefore, Boyle's position was not analogous to that of the victim in *Cung La.*

¶ 13    Nor, as Boyle argues, was his situation similar situation to that of the assailants in *Cung La.* The assailants in *Cung La* used three vehicles to block the victim's car from driving away, thus facilitating the assault. *Cung La*, 830 P.2d at 1008. But here, there is no evidence to suggest that the Toyota was intentionally blocking the other vehicle from leaving the scene. Rather, the Toyota was stopped at a stop light. The fact that the other vehicle executed a U-turn to leave the area, injuring Boyle in the process, suggests that Boyle, not the Toyota, was blocking the other vehicle from leaving.

---

[victim's] use of or presence in the vehicle was causally related to his injuries." *Cung La*, 830 P.2d at 1012.

¶ 14    In any event, the fact that *Cung La* discussed whether the victim's shooting involved the use of the assailants' uninsured vehicle is inapposite to this case.  There, the policy covered any injury "arising out of the operation, maintenance or use of *an uninsured motor vehicle.*"  *Id.* (emphasis added).  In contrast, under the terms of the Bristol West policy, Boyle (who did not own the vehicle) was only insured for injuries he suffered arising out of the use of "the covered auto."  Thus, even if Boyle could be said to have been "using" the Jeep, he could not recover from Bristol West.

### 2.    Boyle's Proximity to the Toyota Does Not Establish Use of the Vehicle

¶ 15    Boyle also argues that because he only stepped out of the Toyota briefly and remained within a few feet of it, he was still using the vehicle.  But the key inquiry is not how long he was outside of the car or how far he strayed from it.  Rather, the question is whether the activity he was engaged in was a cognizable use of the vehicle.

¶ 16    Boyle relies on cases that involve commercial vehicles to support his argument.  *See Mays v. Travelers Prop. Cas. Co. of Am.*, No. Civ. A 04-D-486 CBS, 2005 WL 2406108 (D. Colo. Sept. 28,

2005); *McMichael*, 906 P.2d 92. But as previously stated, cognizable commercial vehicle "uses" are more expansive than those for noncommercial vehicles. *Kastner*, 77 P.3d at 1262-63. Nevertheless, even in determining whether a commercial vehicle was in "use" by the victim, "[t]hese cases did not turn on the proximity of the claimant to the vehicle at the time of the accident but, rather, the particular activity in which the claimant was engaged." *McMichael*, 906 P.2d at 102.

¶ 17 Nor do the cases cited by Boyle that involve noncommercial vehicles turn on proximity to the vehicle. In *Government Employees Insurance Co. v. MFA Mutual Insurance Co.*, 802 P.2d 1122 (Colo. App. 1990), the victim was injured after stepping out of the car to change a flat tire. *Id.* at 1124. A division of this court held that "the storage of a spare tire is a use within the inherent purpose of an automobile." *Id.* at 1125. And in *Progressive Casualty Insurance Co. v. Farm Bureau Mutual Insurance Co.,* 53 P.3d 740 (Colo. App. 2002), the victim stepped out of the vehicle to render aid to those in a car accident. *Id.* at 742. A division of this court also held that the need for a motorist to leave his or her vehicle to assist other motorists in need of assistance after an injury-causing accident was

a "foreseeable event arising out of the use of the vehicle." *Id.* (quoting *Metro. Prop. & Cas. Ins. Co. v. Neubert*, 969 P.2d 733, 735 (Colo. App. 1998)).

¶ 18    Here, in contrast, Boyle did not leave the Toyota to render assistance to another injured party. Rather, he stepped out of the Toyota to approach the occupant of the other vehicle involved in a road rage incident. His use of the Toyota was therefore not one that was "contemplated by the policy in question." *Mason v. Celina Mut. Ins. Co.*, 161 Colo. 442, 444, 423 P.2d 24, 25 (1967); *see also Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 15 (holding that a driver's act of parking his car behind plaintiff's vehicle during a road rage incident to block plaintiff's vehicle from driving away was "not using the car for transportation and not another use contemplated by the policy").

¶ 19    Unlike a flat tire or a car accident victim in need of assistance, a passenger getting out of a vehicle to approach another driver involved in a road rage incident is not inherent to using a vehicle for transportation or a use contemplated by the insurer when issuing the policy.

### 3. Boyle's Leaving the Toyota to Approach the Jeep Interrupted the Causal Chain

¶ 20    Finally, Boyle's actions fail to satisfy the second prong of the *Kastner* test as well. By leaving the vehicle to confront the driver of the Jeep, Boyle engaged in an independent significant act or non-use of the vehicle. In doing so, he interrupted the "but for" causal chain between the covered use of the vehicle for transportation and his injury. *See Roque*, ¶ 16.

¶ 21    Boyle argues that he would have been injured by staying in the Toyota, and thus it would be absurd to deny him coverage merely because he exited the car to avoid the injury. But the case Boyle relies on, *Frain v. Keystone Insurance Co.*, 640 A.2d 1352 (Pa. Super. Ct. 1994), is inapposite. In *Frain*, the plaintiff was injured as she fell while running from her parked vehicle to avoid being struck by an oncoming tractor trailer. *Id.* at 1353. The appellate court noted that though the plaintiff was not in the vehicle when she was injured, she had been entering the vehicle at the time she noticed the imminent collision. *Id.* at 1356. The court noted that a requirement that she enter the vehicle, rather than attempt to

remove herself from the imminent danger, would encourage irresponsible behavior. *Id.*

¶ 22 In contrast, Boyle did not get out of the Toyota to avoid an imminent collision. Indeed, there was no evidence that his or his driver's safety was contingent on his getting out and approaching the Jeep on foot.[6] By doing so, he engaged in an independent non-use of the vehicle that interrupted the causal chain.

¶ 23 In sum, based on the undisputed facts, Boyle was not using the Toyota in a manner contemplated by the insurance policy when he was injured. Further, because he had voluntarily left the vehicle for a purpose that was not inherent to transportation and was not avoiding imminent injury, his injuries did not arise out of the use of the vehicle. Because there was no genuine issue of material fact as to whether the injuries arose out of the use of the Toyota, the

---

[6] Boyle asserts that there is a factual dispute as to whether he approached the Jeep in a threatening manner. But Boyle also admits in his opening brief that this factual dispute is not material. We agree. Whatever his motive or demeanor while approaching the Jeep, Boyle's decision to leave the vehicle for a purpose other than transportation was not "use" of the Toyota. Thus, even if this fact is in dispute, it is not a material dispute sufficient to defeat summary judgment. *See Salas v. Grancare, Inc.*, 22 P.3d 568, 571 (Colo. App. 2001).

district court properly granted Bristol West's motion for summary judgment.

## III.   Conclusion

¶ 24     The judgment is affirmed.

JUDGE ROMÁN and JUDGE PAWAR concur.