469 So.2d 815 (1985)
John E. TUERK, Karen J.B. Tuerk, His Wife, and Stuart Spencer Wickens, Appellants,
v.
ALLSTATE INSURANCE COMPANY and Comstock Insurance Company, Appellees.
No. 84-1112.
District Court of Appeal of Florida, Third District.
April 16, 1985.
Rehearing Denied June 10, 1985.
Dennis G. King, Miami, for appellants.
Marlow, Shofi, Ortmayer, Smith, Connell & Valerius, Joseph H. Lowe, Spencer, Taylor & Homer and W. Thomas Spencer, Miami, for appellees.
Before SCHWARTZ, C.J., and HUBBART and JORGENSON, JJ.
JORGENSON, Judge.
This appeal requires us to confront still another dimension in the ongoing controversy regarding the extent of automobile insurance coverage where the insureds are the victims of criminal assaults by unidentified third parties.
At approximately 9:30 p.m., John E. Tuerk and Stuart Spencer Wickens had just left Tuerk's residence and were traveling in Tuerk's dark colored Chevrolet Blazer when they were shot and wounded. Five days later, in the evening, Efrain Paredes, a subject of numerous narcotics investigations who lived one block away from Tuerk and who also owned a dark colored "Blazer-type" vehicle, was shot and killed while traveling in a leased Ford Thunderbird.
Tuerk's primary insurer was Allstate Insurance Company (Allstate), and he had umbrella coverage with Comstock Insurance Company (Comstock). Wickens was insured by Fortune Insurance Company (Fortune). Tuerk, his wife, and Wickens filed suit against Allstate and Comstock seeking a declaratory decree that they had uninsured motorist coverage (UM) and personal *816 injury protection (PIP) with Allstate and Comstock.[1] After discovery was completed, all parties moved for summary judgment on the issue of coverage.
At the summary judgment hearing, deposition testimony was introduced wherein Detective Fraley opined that Tuerk and Wickens were shot because Tuerk's Blazer vehicle was mistakenly identified as Paredes'.[2] Tuerk and Wickens offered only the sketchiest evidence concerning the details of the shooting.
The trial court entered summary final judgment for defendants Allstate and Comstock, finding that the incident sued upon did not arise out of the ownership, maintenance or use of an uninsured motor vehicle and, thus, the Tuerks and Wickens could not recover UM or PIP benefits. The court dismissed the lawsuit with prejudice.
This court, our sister courts, and the Supreme Court of Florida have all recently considered the issue of insurance coverage where an insured is shot while occupying a motor vehicle. See Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984) (where there was some nexus between the motor vehicle and the injury and ultimate death of driver, shot by stranger after refusing to give stranger a ride, the injury could be said "to arise out of the use of the motor vehicle" and thus PIP benefits applicable to incident); Pena v. Allstate Insurance Co., 463 So.2d 1256 (Fla. 3d DCA 1985) (where robber motivated by belief that taxi driver likely to have cash and taxicab was instrumentality both in passenger's armed robbery of driver and passenger's escape, a strong nexus existed between "use of the vehicle" and its driver's injuries and entitled the insured taxi driver to PIP benefits; however, there was no entitlement to UM protection because there was no uninsured vehicle or uninsured motorist involved); cf. Doyle v. State Farm Mutual Insurance Co., 464 So.2d 1277 (Fla. 3d DCA 1985) (no PIP coverage where no causal connection existed between vehicle, the mere situs of the incident, and injuries sustained by driver as he exited car and handed wallet to armed assailant in driveway); Allstate Insurance Co. v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984) (no PIP coverage where insufficient nexus between use of vehicle and assault upon insureds by neighbor/gunman who first stalked them and, then, when they were in their car, began attempted massacre, the car being "merely the situs of the attack").
In the case at bar, Tuerk's vehicle was not merely the situs of the attack. Unlike Doyle, where the robbery was unrelated to the use of the vehicle, and unlike Famigletti, where the shooting of particular individuals was unrelated to the use of the vehicle, here, an unknown gunman searched for the occupants of a particular vehicle, and the critical, contributing factor that led to the shooting of the occupants of Tuerk's vehicle was the assailant's misidentification of Tuerk's Blazer for Paredes' "Blazer-type" vehicle due to the similarity between Tuerk's and Paredes' vehicles. Hence, the attack upon Tuerk and Wickens arose out of the use of that car.
We therefore conclude that the Tuerks are entitled to PIP coverage. The trial court correctly found that UM coverage was not implicated.
Affirmed in part; reversed in part.
NOTES
[1] The court determined that Wickens had PIP coverage with Fortune, and on appeal Wickens does not seek PIP coverage from Allstate and Comstock.
[2] No one has been caught or charged with the shooting.