**CUNG LA, Petitioner,**

v.

**STATE FARM AUTOMOBILE INSURANCE COMPANY, Respondent.**

**No. 91SC349.**

Supreme Court of Colorado, En Banc.

May 26, 1992.

Fogel, Keating and Wagner, P.C., Alan Shafner, Charles R. Free, Denver, for petitioner.

Hall & Evans, Alan Epstein, Denver, for respondent.

Justice ERICKSON delivered the opinion of the court.

We granted certiorari to review *State Farm Automobile Insurance Co. v. Cung*

*La,* 819 P.2d 537 (Colo.App.1991) (*State Farm*). The issue before us centers on the interpretation of a State Farm automobile liability policy and the uninsured and no fault provisions in that policy. The petitioner, Cung La, was driving a white 1984 Mustang that was insured by State Farm when he was intentionally shot by a passenger in an uninsured motor vehicle. The court of appeals held that under the uninsured or no fault provision of the State Farm policy the petitioner did not sustain an injury from the use or operation of either the insured Mustang or the vehicle from which the shot was fired. We reverse and remand with directions.

I

On August 7, 1988, petitioner was driving eastbound on I–70 in the insured Mustang when three motor vehicles boxed him in. The three vehicles, also eastbound on the freeway, took part in a maneuver that prevented petitioner from changing the speed or direction of the Mustang and enabled the assailant in one vehicle to shoot the petitioner. Petitioner's vehicle was boxed in by one vehicle in front, one behind, and one on the left side of the Mustang. The assailant in the vehicle to the left of the Mustang fired a shot that went through the windshield of the Mustang and hit the petitioner in the head.

Evidence was presented that on July 31, 1988, the occupants of the assailant's vehicle had been involved in an altercation with the petitioner and other individuals. During the fight, the assailant's group threw rocks and bottles at the Mustang. The fight moved into a nearby restaurant, but the petitioner remained outside with his

car to protect it. The shooting incident occurred on the freeway one week later.

According to an investigating officer, the petitioner was shot when the assailant's group was "looking for an opportunity to shoot any one of the ... individuals" they had been in the altercation with the previous week. The investigator testified, and the petitioner contends, that the petitioner was not the primary target and that he was shot because he was driving the white Mustang that the assailant identified during the earlier altercation.

Petitioner filed a claim for no fault and uninsured motorist benefits under the automobile liability policy issued by State Farm.[1] State Farm sought a declaratory judgment to determine whether its automobile insurance policy on the vehicle provided coverage of the injuries the petitioner sustained in the shooting. The no fault personal injury provision in the insurance policy provides:

> We will pay in accordance with the No–Fault Act[2] for bodily injury to an insured caused by an accident resulting from the use or operation of a motor vehicle as a motor vehicle....

The uninsured motorist provision of the policy states:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.[3]

The trial court found that there was no genuine issue of material fact and granted summary judgment for State Farm, which was affirmed by the court of appeals.

**1.** The Mustang the petitioner was driving when he was shot was owned by his father, Can La, and was insured by State Farm. Both the no fault and the uninsured motorist provisions of the State Farm policy state that an "insured" includes a person who sustains bodily injury while occupying the insured vehicle with the consent of the named insured.

**2.** The "No–Fault Act" referred to in the policy is the Colorado Auto Accident Reparations Act, §§ 10–4–701 to –724 (1987 & 1991 Supp.).

**3.** The petitioner filed a claim under the uninsured motorist provision on the basis that the identity of the driver or owner of the assailant's motor vehicle was unknown. The State Farm policy provides that an uninsured motor vehicle includes "a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which causes bodily injury to the insured."

## II

■ Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. "The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo.1988); *see, e.g., United States v. Jesse*, 744 P.2d 491 (Colo.1987); *Abrahamsen v. Mountain States Tel. & Tel. Co.*, 177 Colo. 422, 494 P.2d 1287 (1972).

## III

The court of appeals concluded that, because the petitioner's injuries were caused by the gunshot, they were not covered under the uninsured motorist provision of the State Farm policy. We disagree.

In order to determine whether summary judgment was proper on the petitioner's claim under the uninsured motorist provision, we must determine whether evidence was presented that supports the conclusion that his injuries arose "out of the operation, maintenance or use of an uninsured motor vehicle." The assailant's use of a firearm to shoot the petitioner does not preclude the petitioner's resulting injuries from having arisen out of the use of the uninsured motor vehicle if that vehicle contributed to the injuries and the injuries would not have been sustained but for the assailant's use of the uninsured vehicle. A majority of the states that have dealt with the issue have found a sufficient causal connection under similar facts to invoke uninsured motorist insurance coverage. For example, in *Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876 (Minn.1987), the Minnesota Supreme Court held that the injury to the insured, who was shot by another motorist as they both drove down the freeway, arose out of the use of the assailant's uninsured motor vehicle. The court concluded that the assailant's car was an active accessory to the assault because the assailant used the car to keep up with the insured for over two miles, used it to maneuver himself into position to shoot the insured, and was driving the car when he shot the insured. In *Ganiron v. Hawaii Insurance Guaranty Association*, 69 Haw. 432, 744 P.2d 1210 (1987), the Hawaii Supreme Court determined that the insured's injuries arose out of the operation, maintenance, or use of the uninsured vehicle when the insured was shot by an unidentified passing motorist while driving on the freeway. *See also Foster v. Lafayette Ins. Co.*, 504 So.2d 82, 86 (La.App.1987); *Shouman v. Nationwide Ins. Co.*, 42 Ohio App.3d 159, 537 N.E.2d 696, 697 (1988); *Willard v. Kelley*, 803 P.2d 1124, 1131 (Okla.1990); *Hulsey v. Mid–America Preferred Ins. Co.*, 777 P.2d 932, 937 (Okla.1989); *General Accident Ins. Co. of America v. Olivier*, 574 A.2d 1240, 1242–43 (R.I.1990); *Detweiler v. J.C. Penney Casualty Ins. Co.*, 110 Wash.2d 99, 751 P.2d 282, 287 (1988).

■ Other courts have held that gunshot injuries arose out of the use of the insured's automobile for purposes of automobile liability insurance coverage. The words "arise out of the ownership, maintenance, or use" have the same meaning in the uninsured motorist provision of a policy as they do in the liability provision of the policy. Irvin E. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, Compulsory Coverage* § 24.04, at 24–16.1 (2d ed. 1992 rev.); *see Federated Mut. Implement & Hardware Ins. Co. v. Gupton*, 357 F.2d 155, 157 (4th Cir.1966) (word "use" in uninsured motorist endorsement has same meaning as in general liability coverages). Section 10–4–609 requires insurers to provide protection against uninsured motorists, unless the insured waives that protection.

> [T]he statute ... reflects a strong legislative intent to permit insureds who purchase such coverage to receive the benefits thereof to the extent necessary for full compensation for loss caused by the negligent conduct of financially irresponsible motorists.

*Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989); *see also Alliance Mut. Casualty Co. v. Duerson,*

184 Colo. 117, 124, 518 P.2d 1177, 1181 (1974). Uninsured motorist coverage permits the insured to recover compensation for loss due to the negligent conduct of uninsured motorists in the same manner that recovery would be permitted for a loss due to the negligence of an insured motorist.

In *State Farm Mutual Automobile Insurance Co. v. Davis*, 937 F.2d 1415 (9th Cir.1991), an occupant in a vehicle shot and injured the driver of another vehicle while the vehicles were proceeding down the highway. The assailant's automobile insurance liability policy provided coverage for injuries "resulting from the ownership, maintenance or use" of the insured vehicle.[4] The Ninth Circuit Court of Appeals found use of assailant's vehicle because the injury would not have occurred without the use of the vehicle. *Id.* at 1420; *see also National Ben Franklin Ins. Co. v. Valdes*, 341 So.2d 975 (Fla.1976) (trial court holding that death of person hit by beer mug thrown by passenger in insured automobile arose out of the ownership, maintenance, and use of the assailant's automobile for purposes of automobile liability insurance policy did not conflict with prior Florida case law).

A few states have found no causal connection between an insured's gunshot injuries and the uninsured vehicle from which the shots were fired. *Wausau Underwriters Ins. Co. v. Howser*, 727 F.Supp. 999 (D.S.C.1990); *Kessler v. Amica Mut. Ins. Co.*, 573 So.2d 476, 477 (La.1991). In *Wausau* the South Carolina Supreme Court held that gunshot injuries inflicted by a passing motorist were caused by the gunshot, not by the assailant's vehicle. 727 F.Supp. at 1001. We do not find the reasoning in those cases persuasive in Colorado.

Other cases finding no causal connection are factually distinguishable. In *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554 (1972), this court held that an accidental shooting that occurred inside a vehicle did not "arise out of the use" of the vehicle for purposes of the automobile liability insurance policy. *Id.* at 61, 495 P.2d at 555. The vehicle in *Azar* was stopped and there was no contention that the vehicle either "contributed to or was connected" to the shooting. *Id.* at 60, 495 P.2d at 555; *see also Mason v. Celina Mut. Ins. Co.*, 161 Colo. 442, 423 P.2d 24 (1967) (injuries sustained from discharge of pistol did not "arise out of the use" of automobile pistol was in for purposes of automobile liability insurance policy since vehicle was parked, engine was off, and vehicle did not occasion pistol's discharge).

*Florida Farm Bureau Insurance Co. v. Shaffer*, 391 So.2d 216 (Fla.Dist.Ct.App. 1980), held that the fact that the assailant was occupying the vehicle at the time of the shooting was merely incidental since the vehicle was used only to transport the assailant to the site from which the gun was fired and the vehicle was stopped. *Id.* at 218. There was not a sufficient causal relationship to invoke the provisions in the assailant's automobile liability policy. The Florida court stated that there was no "showing that the automobile itself was used in some manner to cause or produce the injury." *Id.*

In *Kohl v. Union Insurance Co.*, 731 P.2d 134 (Colo.1986), we interpreted section 42-7-413(1)(c), 17 C.R.S. (1984), which provides the minimum level of coverage required for an automobile insurance liability policy. The language of section 42-7-413(1)(c) is similar to that in the State Farm uninsured motorist provision. Section 42-7-413(1)(c) requires the liability insurance policy "to insure every [insured] person on account of the maintenance, use, or operation of the motor vehicle."[5] In *Kohl* we stated:

---

**4.** The court, in deciding to apply California law, stated that "arise out of the use" requires a slight causal connection in both California and Tennessee and that a reasonable person "would understand the phrase 'resulting from the use' of an insured vehicle to" require the same slight causal connection. 937 F.2d at 1419.

**5.** In this case, there is no need to address the scope of the introductory phrase "arising out of" as opposed to "on account of." Both phrases indicate some causal connection between the injuries and the use, operation, or maintenance of the motor vehicle. The primary word to be interpreted is "use." *See supra* n. 4.

An accident occurs "on account of the use of a motor vehicle as a motor vehicle" if the injury that forms the basis of the claim is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose. *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554 (1972); *Mason v. Celina Mutual Insurance Co.*, 161 Colo. 442, 423 P.2d 24 (1967). To establish the requisite causal relationship, the claimant must establish that the accident would not have occurred but for the vehicle's use [in a manner that is not foreign to its inherent purpose]. *Titan Construction Co. v. Nolf*, 183 Colo. 188, 515 P.2d 1123 (1973). *See also Trinity Universal Insurance Co. v. Hall*, 690 P.2d 227, 230 (Colo.1984). The claimant need not establish ... that the vehicle was the sole cause of the accident; it is sufficient that the claimants demonstrate that the injury "originated in," "grew out of," or "flowed from" a use of a vehicle. *Azar v. Employers Casualty Co.*, 178 Colo. at 61, 495 P.2d at 555. ...

731 P.2d at 135–36 (footnote omitted); *see also State Auto. and Casualty Underwriters v. Beeson*, 183 Colo. 284, 288–89, 516 P.2d 623, 625 (1973). In *Kohl*, bystanders were shot when the insured was removing a rifle from the gun rack in the jeep. We held that, since the use of the jeep to transport hunters and firearms was a use of the vehicle and was not foreign to its design, the insured's use of the jeep was causally related to the discharge of the rifle under the provisions of the automobile liability policy. 731 P.2d at 136.

**6.** Since the trial court granted summary judgment based on its determination that the shooting did not arise out of the use of the motor vehicle as a motor vehicle, it did not address whether an intentional shooting was an "accident" under the provisions of the policy. We do not address the "accident" issue.

**7.** In *Trinity Universal Insurance Co. v. Hall*, 690 P.2d 227, 228–29 (Colo.1984), the insurance policy provided that the insurer would

> pay, in accordance with the Colorado Auto Accidents Reparation Act, personal injury protection benefits for ... bodily injury sustained by an eligible injured person caused by an

Application of the uninsured motorist provision requires a causal connection between the uninsured motor vehicle and the injury. Here, the fact that the firearm contributed to the injuries does not preclude the requisite causal connection. Evidence was presented that it was more than incidental that the assailant was inside a vehicle when he shot the petitioner. At the time the shooting occurred, both the assailant's vehicle and the petitioner's vehicle were proceeding on I–70. Without a vehicle and the assistance of two other vehicles, the assailant would not have been able to restrict the movement of the Mustang and shoot the petitioner.

The petitioner presented evidence that raised a material question as to whether the assailant's use of the uninsured vehicle contributed to the shooting and to the petitioner's injuries.

## IV

The court of appeals also determined that the petitioner's injuries did not result from the use or operation of the Mustang within the no fault provisions of the policy. We disagree. The no fault personal injury protection provision in the insurance policy provides:

> We will pay in accordance with the No–Fault Act for bodily injury to an insured caused by an accident [6] *resulting from the use or operation of a motor vehicle as a motor vehicle* [7]....

(Emphasis added.) *See* § 10–4–706, 4A C.R.S. (1987) (amended 1991) (requiring personal injury protection for insureds).

> accident arising out of the use or operation of a motor vehicle as a motor vehicle.
>
> We stated that the words "as a motor vehicle" were an impermissible limitation on liability if the insurer interprets those words in a way that limits the coverage required under the Colorado Motor Vehicle Reparations Act, §§ 10–4–701 to –723, 4 C.R.S. (1973 & 1983 Supp.).
>
> We need not determine here whether State Farm intended to limit the coverage required under the Act by including the words "as a motor vehicle" since we find that the petitioner was using or operating the motor vehicle as a motor vehicle.

■■ The insured's no fault insurance coverage for injuries sustained when the insured is shot while occupying a motor vehicle depends on the nexus between that motor vehicle and the insured's injuries. *See, e.g., Tuerk v. Allstate Ins. Co.*, 469 So.2d 815 (Fla.Dist.Ct.App.1985); *Gajewski v. Auto–Owners Ins. Co.*, 414 Mich. 968, 326 N.W.2d 825 (1982), *rev'g*, 112 Mich. App. 59, 314 N.W.2d 799 (1981). In *Tuerk* the insured presented evidence that he was shot because the vehicle he was driving was mistakenly identified as someone else's. The District Court of Appeal of Florida concluded that the attack "arose out of the use of that car" and that the insureds were entitled to personal injury protection coverage. *Id.* at 816. The court distinguished cases in which the vehicles were merely the situs of the attack and thus the attacks were unrelated to the use of the vehicles. *Id.* (distinguishing *Doyle v. State Farm Mut. Auto. Ins. Co.*, 464 So.2d 1277 (Fla.Dist.Ct.App.1985), and *Allstate Ins. Co. v. Famigletti*, 459 So.2d 1149 (Fla.Dist.Ct.App.1984)); *see also Washington v. Hartford Accident & Indemnity Co.*, 288 S.E.2d 343 (Ga.Ct.App.1982) (gunshot injury sustained by passenger on school bus did not arise out of the use of a motor vehicle for purposes of no-fault provisions of automobile insurance policy since there was no causal connection or relationship between use of the vehicle and the injury).

Similarly, in *Gajewski*, the Supreme Court of Michigan determined that there was a direct causal relation between the insured's operation of his vehicle and his injuries. The insured was injured in his vehicle by an explosive device that was detonated when he turned the ignition key. 326 N.W.2d 825.

In *State Automobile and Casualty Underwriters v. Beeson*, 183 Colo. 284, 516 P.2d 623 (1973), we held that the injuries sustained by a passenger in a motor vehicle did not arise out of the use of a vehicle. A passenger in a station wagon was struck in the eye when keys to a pickup truck were thrown into the station wagon. The liability policies insuring the station wagon and the pickup truck required the insurer "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as a result of injuries 'arising out of the ownership, maintenance or use' of the insured vehicle." *Id.* at 288–89, 516 P.2d at 625. The causal connection between the injury and either the station wagon or the pickup truck was not sufficient to cause the injury to come within the meaning of "arising out of the use" of a vehicle. *Id.* The victim could just as well have been standing in the street at the same location. Therefore, although the victim was present in the station wagon when she was injured, her injury did not flow from or arise out of her presence in the automobile.

Evidence was presented that the assailant identified the petitioner by his presence in the Mustang and shot him because he was in the Mustang. The court of appeals stated, "Even assuming that the assailant was able to locate respondent only because he recognized his car, ... the 'use' of a car by an assailant as a means to locate or identify his victim is not an inherent use of a vehicle...." *State Farm*, 819 P.2d at 539–40. We believe the court of appeals misapplied the concept of use of a vehicle under the no fault provision. Under the facts here, the no fault provision applies to the petitioner's use of his vehicle, not the assailant's use of the Mustang, since the petitioner was the one operating the Mustang.

At the time of the shooting, the petitioner was driving and operating the vehicle in a manner not foreign to its inherent purpose. If, as the petitioner contends, the assailant identified and shot him because of the vehicle he was driving and would not have shot him but for his driving the vehicle, the injuries he sustained from the gunshot were causally related to his use of the vehicle. Thus, a material question of fact was raised as to whether the petitioner's use of or presence in the vehicle was causally related to his injuries.

V

Accordingly, we reverse and remand to the court of appeals with directions to re-

verse the summary judgment for State Farm and to return the case to the trial court for further proceedings consistent with this opinion.

ROVIRA, C.J., dissents and VOLLACK, J., joins in the dissent.

Chief Justice ROVIRA dissenting:

The trial court granted summary judgment for State Farm Automobile Insurance Company (the insurer) on the claims for coverage by Cung La (petitioner) under the no-fault personal injury protection (PIP) provision and the uninsured motorist provision in the insurance contract entered into between the petitioner's father and the insurer. The court of appeals affirmed. *State Farm Auto. Ins. Co. v. Cung La,* 819 P.2d 537 (Colo.App.1991). The majority reverses this judgment, finding that the petitioner "raised a material question as to whether the assailant's use of the uninsured vehicle contributed to the shooting and to the petitioner's injuries" and that "a material question of fact was raised as to whether the petitioner's use of or presence in [his] vehicle was causally related to his injuries." Maj. op. at 1011, 1012. I do not, however, believe that policy coverage for either the manner in which the assailant used his vehicle or the petitioner used his was ever within the reasonable purview of the parties to the insurance contract. Instead, the injuries here were the result of an intentional criminal act which occurred while the assailant and the victim were driving automobiles. The cars provided the situs for the crime, but were not used in a manner triggering coverage under either the no-fault or uninsured motorist provi-

sions of the insurance policy. Accordingly, I dissent.

I

Petitioner was involved in an altercation with a group of gang members during which the gang members threw objects at the petitioner's father's car, a Mustang. One week later, while driving the Mustang on the highway with his father's permission, petitioner was shot by a person associated with the gang. The assailant was a passenger in a vehicle being driven alongside of the Mustang. The assailant's car was one of three cars used to block the Mustang into the far right lane of travel. As a result of the gunshot to his head, petitioner lost control of the Mustang and it eventually stopped in the middle travel lane of the highway. The Mustang was then struck in the back by a third vehicle.[1] Petitioner made a claim to the insurer for uninsured motorist insurance benefits and PIP benefits under the policy issued by the insurer.

The insurer filed a complaint for declaratory judgment to determine whether petitioner was entitled to benefits for his injuries under either the PIP or the uninsured motorist provision.[2] The trial court, limiting its ruling to whether petitioner's gunshot injuries were compensable,[3] granted summary judgment for the insurer finding that "as a matter of law the vehicle in this case was not used as is contemplated for the use of a motor vehicle under the PIP statute ... [and] the injury did not arise out of the use of a motor vehicle as a motor vehicle...."[4] The court of appeals af-

---

1. There were two passengers in the car with the petitioner. These two individuals suffered injuries as a result of the accident, but are not parties to this case.

2. Declaratory judgment was sought pursuant to C.R.C.P. 57 and §§ 13–51–101 to –115, 6A C.R.S. (1987).

3. There is a factual dispute concerning the nature of the petitioner's injuries. The petitioner claims injury from both the gunshot and the resulting collision while the insurer alleges that the petitioner's injuries resulted only from the gunshot wound. The trial court found that

"[t]he complaint in this case goes only to the issue of injuries sustained from the gunshot wound. Therefore, any injuries sustained from any other matter—and in this case, I assume that would be because of the collision which occurred subsequent—is outside the issues of the complaint and are not relevant before us and, therefore, are of no consequence to the ruling on this Motion for Summary Judgment."

4. By this language, the trial court appears to have ruled only on the issue of coverage under the PIP provision, although the motion for summary judgment argued against coverage under both the PIP and the uninsured motorist provi-

firmed, holding that the gunshot injury did not originate in or grow out of the inherent use of the petitioner's vehicle for the purpose of coverage under the no-fault provision of the policy, and that the uninsured motorist provision did not provide coverage since the injury was caused by the gunshot, not the use of the vehicle. *State Farm Auto. Ins. Co. v. Cung La*, 819 P.2d 537, 539–40 (Colo.App.1991). I agree with the court of appeals that the petitioner's injuries would not be covered under either provision because they were not sufficiently causally connected to the use of either the assailant's or the petitioner's automobile and were not reasonably contemplated by the parties to the insurance policy.[5]

## II

The policy under which the petitioner claims coverage contains the following no-fault PIP provision:

> We will pay in accordance with the No–Fault Act [§§ 10–4–701 to –725, 4A C.R.S. (1987 & 1991 Supp.) (statutorily entitled "Colorado Auto Accident Reparations Act")] for bodily injury to an insured caused by an accident resulting from the use or operation of a motor vehicle as a motor vehicle.

To qualify for coverage under this provision, an injury must be caused by an accident resulting from the petitioners's use or operation of his vehicle. The majority holds that, since the petitioner introduced evidence that the assailant identified him because he was driving the same car involved in the earlier altercation, the petitioner raised a material question of fact as to whether his "use of or presence in the

vehicle was causally related to his injuries." Maj. op. at 1012.

The policy also contains the following uninsured motorist provision:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

Similar to the PIP provision, an injury under the uninsured motorist provision will be covered if it arises out of the operation, maintenance or use of an uninsured motor vehicle.[6] Petitioner asserts that his injuries arose out of the unknown assailant's use of the uninsured vehicle. The court of appeals found that the injury was not caused by the automobile but by the gunshot, and affirmed the trial court. The majority disagrees, finding that the use of the uninsured vehicle, along with two other vehicles, to restrict the petitioner's movement presented a material question "as to whether the assailant's use of the uninsured vehicle contributed to the shooting." Maj. op. at 1011.

## A

Generally in other jurisdictions, to establish a connection between the claimant's use of a vehicle and the injury for the purpose of PIP benefits, the test is "whether the injury was foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." 1 Irvin E. Schermer, *Automobile Liability Insurance* ch. 2, 2–7 (1984). In *O'Key v. State Farm Mutual Automobile Insurance Company*, 89

---

sions. However, the ruling is based on the meaning of the phrase "arising out of the use of a motor vehicle," which phraseology is, while not verbatim, similarly used in the uninsured motorist provision. The court of appeals, pursuant to the notice of appeal and the arguments from both parties, addressed the issues of coverage under both the PIP provision and the uninsured motorist provision. The majority, therefore, correctly addresses both issues.

**5.** The majority, based on the trial court ruling, limits its analysis to the issue of whether the shooting injuries were the result of the use of a motor vehicle in accordance with the policy

provisions and does not address the issue of whether, as is required by both policy provisions, the injury was the result of an "accident." *See* maj. op. at 1011 n. 6.

**6.** Petitioner's claim under the uninsured motorist provision is based on the fact that the assailant occupied a car whose driver or owner was unknown and that, therefore, the motor vehicle qualified as uninsured because the policy included for the purposes of uninsured motorist coverage a "'hit and run' land motor vehicle whose owner or driver remains unknown and which causes bodily injury to the insured."

Mich.App. 526, 280 N.W.2d 583 (1979), the plaintiff was injured when he attempted to escape from an assailant who had entered his stopped car by putting the car in reverse and accelerating. As the assailant was thrown from the car, he fired several shots, injuring the plaintiff. The court held that:

> Although plaintiff was an occupant of an automobile at the time he sustained the injury, this is not a controlling consideration in resolving this issue. The automobile was not an instrumentality of the injury. Rather, its role in this matter was incidental. Plaintiff's occupancy of the car was a fortuity, in no way connected with the assault. *Nor is an assault by an armed assailant upon the driver of a car the type of conduct that is "reasonably identifiable," with the use of a car.*

*Id.,* 280 N.W.2d at 585 (emphasis added) (footnote omitted).

The "foreseeably identifiable" test was applied and PIP coverage denied when an estranged husband in his automobile pursued his wife in her automobile. *Detroit Auto. Inter–Ins. Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414 (1980). The husband forced the wife's car to the curb by driving his car into the side of her car. The husband then walked over to his wife's car and shot her several times, severely injuring her. The court held that the fact that the wife was occupying her car at the time of her injuries would not support a finding that the injuries arose out of use of the vehicle to support PIP benefits because "[a]n assault by an armed assailant upon the driver of a car is not the type of conduct that is foreseeably identifiable with the *normal* use of a motor vehicle. The connection here was simply incidental to [the husband's] use of his motor vehicle." *Id.,* 290 N.W.2d at 419.

The claimants in *Bennett v. National Union Fire Insurance Co.,* 170 Ga.App. 829, 318 S.E.2d 670 (1984), made an innovative argument in an effort to show a causal connection. The claimants were injured by a third party who intentionally shot at them while they were inside their moving car, and they asserted that but for their "operation and use of the vehicle 'they would not have been in the place where shot and therefore the resulting injury grew out of the *use* of the insured vehicle by the [claimants].'" *Id.,* 318 S.E.2d at 671. The court adopted the general rule that where the injuries do not bear any "apparent relation to the operation of the vehicle or to the use to which it was being put" but instead result "from a deliberate assault which took place in a vehicle simply because that is where the [victims] happened to be when the assailant came 'gunning' for [them]," there is insufficient causal connection between the use of the vehicle and the injury to find the injuries covered by the PIP policy. *Id.* (citation omitted) (brackets in original).

In a case factually similar to this one, the claimants were driving down the street on which they lived. Their neighbor, with whom they had previously been involved in violent altercations, stepped out from behind a tree and shot at the claimants with a machine gun, severely injuring them. The court found that the neighbor intended to murder the claimants and the "mere fact that he chose the site of their automobile for his attempted slaughter does not provide a sufficient nexus between the assault and the use of the car to warrant imposition of PIP coverage." As a result, the court reversed summary judgment for the claimants with directions to enter final judgment for the insurance company. *Allstate Ins. Co. v. Famigletti,* 459 So.2d 1149 (Fla.Dist.Ct.App.1984).

I acknowledge that, as the majority points out, in other jurisdictions, different tests have been applied and different results reached. Maj. op. at 1012. The majority relies in part on *Tuerk v. Allstate Insurance Co.,* 469 So.2d 815 (Fla.Dist.Ct. App.1985), to support the finding of a causal connection where the claimants are injured as a result of identification of a vehicle. In that case, the assailants mistakenly identified the claimants' vehicle for that of their intended victim. The Florida court distinguished this case from *Famigletti* and held that the attack on the claimants arose out of use of the car because the

assailant was searching for occupants of a particular vehicle, and the "critical, contributing factor" that resulted in the shooting of the claimants was the assailant's misidentification of the claimants' vehicle for that of his intended victim. However, *Famigletti* is more factually similar to this case. Here, as a result of previous altercations, the assailants sought out and eventually found the intended victim and chose to attack him while he was driving a car. In *Tuerk*, the victims' use of a car was the only reason for their injuries. The causal connection between use of the automobile and the injury was, therefore, much stronger in *Tuerk* than here. The majority similarly cites *Gajewski v. Auto–Owners Insurance Co.*, 414 Mich. 968, 326 N.W.2d 825 (1982), *rev'g*, 112 Mich.App. 59, 314 N.W.2d 799 (1981), where sufficient causal connection was found between the use of a vehicle and the ensuing injuries when claimant was injured after turning his ignition key which detonated an explosive device attached to the ignition mechanism by unknown persons. Yet, here petitioner does not allege that his motor vehicle played any role in the perpetrator's ability to injure him except for identification purposes. The discharging of the explosive, however, required some detonating mechanism, and the use of the automobile, by nature of its mechanical design, was alleged to have triggered the explosion. The use of the automobile in *Gajewski*, therefore, was much more closely related to the injury than the use of the automobile here.

### B

Jurisdictions are also split on the issue of whether injuries suffered from a gunshot when a vehicle is used as an aid in perpetrating the attack arise out of the use of the assailant's vehicle for the purpose of coverage under an uninsured motorist provision. *Compare Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn. 1987) (sufficient causal connection between injuries and assailant's use of automobile where assailant chased victim with his car and then injured victim in a car-to-car shooting) *with Coleman v. Sanford*, 521 So.2d 876, 877 (Miss.1988) (because shoot-

ing is a deliberate voluntary act, assailant's use of vehicle to chase victim's car only an incidental factor where assailant subsequently injured victim in car-to-car shooting). Without stating the grounds, the majority refuses to adopt the reasoning in jurisdictions that have found such injuries do not qualify for coverage. Maj. op. at 1010. Yet, in *Wausau Underwriters Insurance Co. v. Howser*, 727 F.Supp. 999 (D.S.C.1990), under a similarly worded uninsured motorist policy, the court found that, when the assailant's vehicle was used to bump the claimant's car in an attempt to get her to pull off the road, the claimant failed to establish that her injuries arose out of the use of the assailant's vehicle. Although the vehicle helped the gunman pursue the claimant, the gunshot, not the vehicle, caused her injuries. *Id.* at 1005–06. Likewise, in *Kessler v. Amica Mutual Insurance Co.*, 573 So.2d 476 (La.1991), the claimant sought benefits under his uninsured motorist policy after he was shot by an unknown driver in another automobile. Following a near accident when the assailant ran through a stop sign, the claimant blew his horn at the assailant. The assailant, while driving through the intersection, fired a shot which struck the claimant in the head. The claimant urged the court to find that the injury resulted from the assailant's use of his automobile because the injury-causing conduct was one continuous incident flowing from the assailant's use of his automobile. The court, however, found that the running of the stop sign and the shooting were two separate acts and that, since the claimant's injuries were caused by the shooting, he was not entitled to recover under the uninsured motorist provisions. *Id.* at 478–79.

### III

Where, as here, jurisdictions reach different outcomes on the same issue, *see* maj. op. at 1009–1010, we should rely primarily on our own past decisions. In Colorado, we have construed the phrase "arising out of the ... use," to require a causal connection between the injury and the vehicle use and to require a use within the contemplation

of the policy. Although the PIP and the uninsured motorist provisions at issue here differ in that one authorizes coverage for injuries resulting from use of a vehicle and the other authorizes benefits for injuries arising out of use of a vehicle, I agree with the court of appeals that the phrases "arising out," and "resulting from" are synonymous. *State Farm Auto. Ins. Co. v. Cung La*, 819 P.2d 537, 538 (Colo.App. 1991).

## A

In examining whether use of an automobile falls within the coverage of an automobile insurance policy, we have held that the use should not be analyzed under the tort principle of proximate cause of the injury, but should more specifically be analyzed under the contract principle of examining the meaning and intent of the words in the contractual provision. *Titan Const. Co. v. Nolf*, 183 Colo. 188, 194, 515 P.2d 1123, 1126 (1973). In our past inquiries we have rejected the "but for" test and instead focused the inquiry on whether there was a causal relation or connection between the injury and the use of the vehicle. *Kohl v. Union Ins. Co.*, 731 P.2d 134, 138 (Colo. 1986) (Rovira, J., dissenting).

This framework was first introduced in *Mason v. Celina Mutual Insurance Company*, 161 Colo. 442, 423 P.2d 24 (1967). A firearm was accidentally discharged by an occupant of a parked car, resulting in the death of another occupant. We examined whether an insurance policy that stated that the company would provide coverage for death sustained by any person " 'caused by accident and arising out of the ... use of the automobile' affords coverage to the guest of a named insured." 161 Colo. at 443, 423 P.2d at 24. We held that:

> Even though in a technical sense it might be argued that [the boy who accidentally fired the gun] was using the vehicle at the time the shot was fired, for he was sitting in it, such a use, however, is not the *type of use contemplated by the policy in question* where the injury would have to be one originating from the use of the vehicle as such.

161 Colo. at 444, 423 P.2d at 25 (emphasis added).

In *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554 (1972), a hunter, while driving his automobile, spotted rabbits near the road. The hunter stopped the car and prepared to shoot at the rabbits. However, before he fired he observed an approaching vehicle and withdrew the gun back into the car. The rifle accidentally discharged, injuring another occupant of the vehicle. We held that the vehicle was related to the accident only in that the tortfeasor and the injured party were in it at the time of the accident. For the purpose of determining insurance coverage, we stated:

> [I]t cannot reasonably be said that the discharge of the weapon in this case originated from, grew out of or flowed from the use of the vehicle. Rather, the injury originated from, grew out of or flowed from the use of the firearm. Use, *as contemplated by the automobile liability policy,* means use of a vehicle as such, not a use foreign to its inherent purpose, to which the vehicle might conceivably be put.

178 Colo. at 61, 495 P.2d at 555 (emphasis altered).

Later, we found that where a child sitting in a parked car suffered the loss of one of her eyes when keys thrown from three stories above came through an open car window and struck her, there was less causal connection between the injury and the use of the vehicles than was present in either *Azar* or *Mason* and upheld the denial of coverage. *State Auto. & Casualty Underwriters v. Beeson*, 183 Colo. 284, 516 P.2d 623 (1973).

Our sound policy of requiring a causal connection to exist between the use of the automobile and the injury was later diluted by the majority decision in *Kohl v. Union Insurance Co.*, 731 P.2d 134 (Colo.1987). A hunter reached into his parked vehicle to retrieve a firearm from the gun rack. The gun discharged, killing one person and seriously injuring two others. The majority, finding that but for the hunter's attempt to retrieve and secure the firearm for the

purpose of traveling in his vehicle the accident would not have occurred, held that this use of the vehicle was covered by the policy because the accident "was not merely coincidental to the use of the vehicle" as in *Azar* but that the hunter's actions were "intimately related to his use of the vehicle as transportation for himself and his rifle...." *Id.* at 136. Consequently, injuries that coincidentally occur in an automobile are not within the scope of coverage while injuries related to the use of the vehicle are within the terms of coverage. Dissenting and referring to the majority's distinction of *Kohl* from *Azar*, I stated that "I am at a loss to see how a vehicle reached into for the purpose of unloading a weapon can be 'intimately related' to the accident, while a vehicle in which the tort-feasor, victim and weapon are all situated and from which the shots are intentionally being fired is 'coincidental' with the accident." *Id.* at 140 (Rovira, J., dissenting).

Likewise, in this case, the majority attempts to dilute our established test by distinguishing the facts in *Beeson* from those here, stating that in *Beeson* "although the victim was present in the station wagon when she was injured, her injury did not flow from or arise out of her presence in the automobile" because she "could just as well have been standing in the street at the same location." Maj. op. at 1012. This intentional shooting could also just as well have happened if the petitioner was standing in a parking lot near his car. There is no dispute that this act was intentionally perpetrated either as a result of the altercation the week before or as the result of a longer standing feud.

#### B

Employing an analysis that requires a causal relationship between the injury and the use of the automobile and a use contemplated by the policy in order to qualify for PIP coverage, I do not believe that the petitioner's use of the Mustang is sufficiently causally connected to his injuries which were suffered as the result of an intentional act against an intended victim who happened to be in or near a car at the time of the crime. Nor do I believe such a use could possibly have been within the contemplation of the no-fault provision of the insurance policy.

The majority states that the court of appeals misconstrued the concept of use under the PIP provision because the provision applies to the petitioner's use of his vehicle, not the assailant's use of petitioner's vehicle, the Mustang. Maj. op. at 1012. However, an assertion that the petitioner's use of the Mustang allowed the assailant to identify him actually equates to an assertion that the assailant used the petitioner's car as an identification tool. The majority sidesteps the dilemma posed by this convoluted assertion by stating that the petitioner raised a material question of fact as to whether his "use of or *presence in* the vehicle was causally related to his injuries." Maj. op. at 1012 (emphasis added). Yet, the PIP provision covers injury as a result of the *insured's use* of his car and not the insured's presence in or the assailant's use of the car.

That aside, I do not believe that the use of a car resulting in an identification for the purpose of committing a violent crime is sufficiently causally connected to the injury where, as here, there is evidence that the assailants and the victim had a past history of confrontation. Taking the petitioner's assertions as true, even if the petitioner's use of the car resulted in injury because it provided the assailants with an identification tool, I believe such a use stretches beyond the contractual contemplation of the parties to the insurance policy. As a matter of law, the use of a car which results in identification of an individual so as to perpetrate a crime against him is not the type of use contemplated by the parties for purposes of coverage under the no-fault provision.

#### C

Additionally, I do not agree that the use by the assailant of his car to restrict the petitioner's movement is sufficiently causally connected to the injuries or is a use within the contemplation of the insurance policy. That the assailant, obviously intent

on injuring the petitioner, used his vehicle to restrict petitioner's movement, is at best tenuously related to the injuries suffered due to the gunshot and I believe insufficient to sustain a finding of coverage under the uninsured motorist provision. Furthermore, I cannot perceive that the parties to the insurance contract at the time they entered into it reasonably contemplated the intentional use of an uninsured vehicle as an instrument for blocking in the insured's car so as to enable an occupant of the uninsured car to shoot at the insured motorist.

Reaching an opposite result from the majority on coverage under both the PIP and the uninsured motorist provisions, I would affirm the judgment of the court of appeals and, accordingly, I dissent.

I am authorized to say that Justice VOLLACK joins in this dissent.

